## GREGOIRE v. BIDDLE et al.

### No. 36, Docket 21401.

United States Court of Appeals, Second Circuit.

Argued Oct. 3, 1949.

Decided Oct. 24, 1949.

Gunther Jacobson, New York City, for plaintiff-appellant.

John F. X. McGohey, U. S. Atty., New York City, Harold J. Raby, New York City, Robert Roy Dann, New York City, for defendants-appellees.

Before L. HAND, Chief Judge, and SWAN and CLARK, Circuit Judges.

L. HAND, Chief Judge.

The plaintiff has appealed from a judgment, which dismissed a complaint in two counts because of its "failure to state a claim upon which relief can be granted"— Rule 12(b) (6), Federal Rules of Civil Procedure, 28 U.S.C.A. The first count alleged that the five defendants were two successive Attorneys-General of the United States, two successive Directors of the Enemy Alien Control Unit of the Department of Justice, and the District Director of Immigration at Ellis Island; and that they arrested the plaintiff on the pretence that he was a German and therefore an enemy alien. In spite of a ruling of the Enemy Alien Hearing Board after a hearing that he was a Frenchman, they kept him in custody from January 5, 1942, until September 18, 1946, when Judge Knox found that he was a Frenchman and released him by an order, D.C. 69 F.Supp. 889, which this court affirmed on November 6, 1947.[1] The count ended by alleging that the arrest and imprisonment was "without any authority of law and without any reasonable or colorable cause," and that the defendants "conspired together and maliciously and wilfully entered into a scheme to deprive the plaintiff * * * of his liberty contrary to law." The second count reiterated these allegations and added that the defendants "subjected the plaintiff * * * to the deprivation of his liberty and of his rights, privileges and immunities secured by the Constitution and the laws of the United States," and deprived him of equal protection of the law in violation of Sections 43 and 47 of Civil Rights Act.[2] The judge held that the defendants had an absolute immunity from liability, even though their unlawful acts had been induced only by personal ill-will, and dismissed the complaint for that reason.

We lay aside any extenuating facts, which we might gather from the record in United States ex rel. Gregoire v. W--kins, supra,[1] not because we should not be free to consider them if need were;[3] but, because

---

1. United States ex rel. Gregoire v. Watkins, 2 Cir., 164 F.2d 137.

2. Secs. 43 and 47, Title 8 U.S.C.A.

3. Ira S. Bushey & Sons v. Hedger Transportation Corp., 2 Cir., 167 F.2d 9, 12 (Note 2).

we think that the complaint should not stand, even though under Rule 9(b) we read the allegation that the defendants arrested the plaintiff "maliciously and wilfully," as though it had specifically alleged that they had acted altogether from personal spite and had been fully aware that they had no legal warrant for arresting or deporting the plaintiff. True, so stated, that seems at first blush a startling proposition; but we think, not only that it necessarily follows from the decision of the Supreme Court in Yaselli v. Goff;[4] but that, as a new question, the result is desirable. The facts in Yaselli v. Goff appear in the opinion of this court from which the appeal was taken,[5] they were as follows. The action was to recover damages for the malicious prosecution of the plaintiff—a "Special Assistant to the United States Attorney"—by the defendant, Goff, who had been appointed a "Special Assistant to the Attorney-General," and had been charged with the criminal prosecution of the plaintiff for an attempt to defraud the United States. The case came up upon a motion to dismiss the action, on a record consisting of the complaint, the answer, a reply and a stipulation. The complaint alleged that Goff had "falsely and maliciously and without any reasonable or probable cause," procured an indictment against the plaintiff, had caused him to be arrested, arraigned and brought to trial; but that the judge before whom the case was brought dismissed the indictment upon the prosecution's evidence. Goff answered that he had been appointed to prosecute the case against the plaintiff, and that all the acts charged against him had been in discharge of his duties as such. The reply alleged that, already before he was appointed, Goff had conspired maliciously and without cause to prosecute the plaintiff, and that he had obtained his appointment for that purpose alone. It further alleged that he had represented to the Department of Justice that the United States Shipping Board, of which he had been a commissioner, had evidence of the plaintiff's crime, and that it was by this false means that he had secured his appointment. The stipulation merely contained the letter appointing Goff as "Special Assistant," and declared that it was in that capacity that he appeared before the grand jury, presented the evidence against the plaintiff and conducted all the proceedings.

We discussed at length the absolute privilege of judges, and held that a United States attorney "if not a judicial officer, is at least a quasi-judicial officer, of the government,"[6] and that as such the defendant "in the performance of the duties imposed upon him by law, is immune from a civil action for malicious prosecution. * * * The immunity is absolute and is grounded on principles of public policy. The public interest requires that persons occupying such important positions and so closely identified with the judicial departments of the Government should speak and act freely and fearlessly in the discharge of their important official functions."[7] Upon appeal the Supreme Court affirmed this judgment in a per curiam opinion on the authority of Bradley v. Fisher[8] and Alzua v. Johnson.[9] Both those decisions concerned the privilege of a judge, and held that it was absolute, even though his decision was not the result of an honest effort to apply the law to the facts before him, but of a desire to gratify his personal ill-will against the defeated suitor. Thus the conclusion is inevitable that the Supreme Court took the same view as we: i. e., that officers of the Department of Justice, when engaged in prosecuting private persons enjoy the same absolute privilege as judges. The Court had indeed already granted similar immunity to the Postmaster General[10] declaring that the doctrine covered "heads of Executive Departments"; and the Court of Appeals of the District of Columbia has extended it to a number of

---

4. 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395.

5. 2 Cir., 12 F.2d 396, 56 A.L.R. 239.

6. 12 F.2d at page 404, 56 A.L.R. 239.

7. 12 F.2d at page 406, 56 A.L.R. 239.

8. 13 Wall. 335, 347, 20 L.Ed. 646.

9. 231 U.S. 106, 111, 34 S.Ct. 27, 58 L.Ed. 142.

10. Spalding v. Vilas, 161 U.S. 483, 498, 16 S.Ct. 631, 40 L.Ed. 780.

other executive officials, some of them by no means heads of departments.[11]

It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. There must indeed be means of punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation. Judged as res nova, we should not hesitate to follow the path laid down in the books.

■ The decisions have, indeed, always imposed as a limitation upon the immunity that the official's act must have been within the scope of his powers; and it can be argued that official powers, since they exist only for the public good, never cover occasions where the public good is not their aim, and hence that to exercise a power dishonestly is necessarily to overstep its bounds. A moment's reflection shows, however, that that cannot be the meaning of the limitation without defeating the whole doctrine. What is meant by saying that the officer must be acting within his power cannot be more than that the occasion must be such as would have justified the act, if he had been using his power for any of the purposes on whose account it was vested in him. For the foregoing reasons it was proper to dismiss the first count.

■ Very little need be added about the second count which was laid under the Civil Rights Act. Section 43 is so plainly limited to acts done under color of some state or territorial law or ordinance that no discussion can make it clearer than appears from its reading. It is equally plain that neither the first, nor second, subdivisions of § 47 cover the situation at bar; they concern attempts to deprive persons of public office, or of access to courts or other tribunals, where they may wish to assert their rights. The first clause of the third subdivision of § 47 does declare that, if two or more persons conspire to deprive "any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws", the injured party may recover damages. The plaintiff's argument appears to be that this language creates a claim against any two persons who conspire to injure another for spite or other improper motives, apparently because to single out anyone for illegal aggression is to deny him equal protection of the laws. Quite aside from the fact that in order so to construe the words they must be broken from a context which shows their more limited meaning, it is apparent that they could not have had such a scope without destroying their validity constitutionally. The decision on which the plaintiff relies [12] indeed holds that the doctrine of absolute immunity for official acts does not cover claims

---

11. Mellon v. Brewer, 57 App.D.C. 126, 18 F.2d 168, 53 A.L.R. 1519; Brown v. Rudolph, 58 App.D.C. 116, 25 F.2d 540; Standard Nut Margarine Co. v. Mellon, 63 App.D.C. 339, 72 F.2d 557; Smith v. O'Brien, 66 App.D.C. 387, 88 F.2d 769; Lang v. Wood, 67 App.D.C. 287, 92 F.2d 211.

12. Picking v. Pennsylvania R. R. Co., 3 Cir., 151 F.2d 240.

arising under § 43 of the Civil Rights Act; but it is not in point because, as we have just said, the case at bar is not within that section. Section 48 does not go beyond what is forbidden by § 47.

Judgment affirmed.