OVE GUSTAVSSON CONTRACTING CO., Inc., Plaintiff-Appellant,

v.

Franklin G. FLOETE, as Administrator of General Services Administration, Michael Brennan, individually and as Contracting Officer of General Services Administration, and William A. Boyd, Defendants-Appellees.

No. 70, Docket 26814.

United States Court of Appeals Second Circuit.

Argued Nov. 9, 1961.

Decided Feb. 5, 1962.

Anthony B. Cataldo, New York City, for plaintiff-appellant.

Ann B. Miele, Asst. U. S. Atty., Brooklyn, N. Y. (Joseph P. Hoey, U. S. Atty., Eastern Dist. of New York, Brooklyn, N. Y., on the brief), for defendants-appellees.

Before LUMBARD, Chief Judge, and MEDINA and WATERMAN, Circuit Judges.

MEDINA, Circuit Judge.

Plaintiff, Ove Gustavsson Co. Inc., a New York corporation, appeals from an order and summary judgment in an action against certain officials of the federal Government, in their individual capacity, for damages caused by the alleged wilful and malicious acts of these officials in filing allegedly false reports concerning Gustavsson's performance of a Government construction contract, as a result of which reports the contract was cancelled. While the complaint was dismissed in its entirety, the appeal brings up for review only the summary judgment for defendants on the second claim for relief set forth in the complaint. Gustavsson also appeals from the order, made simultaneously with the granting of the summary judgment, denying Gustavsson's motion to sever the action and remand the second claim for relief to the New York Supreme Court, Queens County, where the action was commenced and from which it was removed to the United States District Court for the Eastern District of New York, pursuant to the provisions of 28 U.S.C. § 1442(a) (1). The opinion of Judge Zavatt is reported at 187 F.Supp. 839. We affirm.

The United States needed a dehumidification hutment at Burlington, New Jersey, for the protection and storage of precision machinery, and on May 28, 1958 Gustavsson entered into a contract with the Government for the construction of the required hutment. A hutment is an enclosed area in a warehouse built by joining panels of sheet metal together, and the one contracted for was to be equipped with dehumidification units. The contracting agency for the Government was the General Services Administration; defendant Brennan was the Contracting Officer and defendant Boyd was his Assistant. Floete, a defendant in the first claim for relief only, was Administrator of the General Services Administration. The original completion date was October 2, 1958, ninety days after Gustavsson received notice to proceed. Although some equipment had arrived at the job site by October 2, the

work was far from completion and the contracting office of the General Services Administration had granted Gustavsson an extension. While the cause of further delay is a matter of dispute between the parties, it is clear that even as late as January 12, 1959, Gustavsson had failed to complete the construction work called for by the terms of the contract.

The contract contained the general provisions of a standard Government construction contract, and it included the following clauses:

"If the Contractor refuses or fails to prosecute the work, or any separable part thereof, with such diligence as will insure its completion within the time specified in this contract, or any extension thereof, or fails to complete said work within such time, the Government may, by written notice to the Contractor, terminate his right to proceed with the work or such part of the work as to which there has been delay.

\*    \*    \*    \*    \*

"If the Contractor fails to proceed at once with the replacement of rejected material and/or the correction of defective workmanship the Government may terminate the right of the Contractor to proceed  \*  \*  \*."

Boyd, after investigating the facts and communicating with the contractor, recommended to his superior, Brennan, that the contract be terminated because of plaintiff's unsatisfactory performance. Brennan agreed, and a report was sent to the Washington office of the General Services Administration. The Washington office approved the report, authorized the termination, and on January 12, 1959 Gustavsson was notified that the contract had been terminated.

On February 6, 1959 Gustavsson appealed the termination to the Administrator of the General Services Administration in accordance with the "disputes" clause of the contract, and this appeal is still pending. Gustavsson also commenced an action in the United States District Court for the Southern District of New York against Franklin G. Floete, Administrator of General Services Administration, Michael Brennan, Contracting Officer, and William A. Boyd, Assistant Contracting Officer, in their official capacities. The relief prayed for in this first action was for an injunction, restraining defendants from awarding the contract to another contractor to complete the work on the as yet useless hutment, to review the decision terminating Gustavsson's contract, and for damages. This action was dismissed for lack of jurisdiction. Ove Gustavsson Contracting Co. Inc. v. Floete, S.D.N.Y., 1959, 176 F.Supp. 544, aff'd, 2 Cir., 1960, 278 F.2d 912, cert. denied, 364 U.S. 894, 81 S.Ct. 225, 5 L.Ed.2d 188.

On June 26, 1959, while its appeal in the first action was still pending, Gustavsson commenced a second action, the subject of this appeal, in the New York State Supreme Court, Queens County. This second action was removed to the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1442(a) (1), and Gustavsson's motion to remand was denied, 176 F.Supp. 841. The complaint alleged two claims for relief. The first, against the defendants Floete and Brennan "in their representative capacities," was dismissed because the same plaintiff was seeking the same relief against the same defendants in the then still pending Southern District action. As Gustavsson no longer contests the propriety of the dismissal of the first claim for relief in the second action, it need concern us no longer.

The gist of the second claim for relief in the second action, asserted against defendants Brennan and Boyd "individually," is that said defendants, with intent to harm and injure the plaintiff, knowingly, intentionally, wilfully, and maliciously made untruthful reports concerning the performance of the contract by Gustavsson, and by reason of such untruthful reports caused the contract to be cancelled. Defendants' motion to dismiss the complaint pursuant to Federal Rule Civ.Proc. rule 12(b), 28 U.S.C. was

658

granted also as to this second claim for relief in the second action, the District Judge very properly treating the motion as one for summary judgment, as voluminous affidavits were submitted and considered in support of and in opposition to the motion. At the same time the District Court denied Gustavsson's cross-motion to sever the claims and to remand the second claim for relief, which the court treated as a motion for reconsideration of its prior order denying the original motion to remand the case.

■ The court below properly held defendants were entitled to summary judgment, because officials of the federal Government are not personally liable for alleged torts based upon acts, done within the scope of their duties, which necessarily involved the exercise of a judgment or discretion which public policy requires be made without fear of personal liability. See, e. g., Barr v. Matteo, 1959, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434; Howard v. Lyons, 1959, 360 U.S. 593, 79 S.Ct. 1331, 3 L.Ed.2d 1454; Spalding v. Vilas, 1896, 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780; Gregoire v. Biddle, 2 Cir., 1949, 177 F.2d 579. The reason for this rule was stated in his own persuasive and inimitable fashion by Judge Learned Hand in Gregoire v. Biddle, supra, at page 581:

"It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. There must indeed be means of punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation."

■■ The applicability of this rule to the circumstances of this case is obvious. Except for "the most resolute, or the most irresponsible," a Government official whose duty it is to inspect the performance of Government contracts would indeed find it difficult honestly and independently to pass upon such work if he knew that an unfavorable report, coupled with an allegation of falseness and malice, could subject him to the risk, the inconvenience and the embarrassment of a public trial and to possible personal liability, as a result of which he might lose his home, his automobile, his savings and whatever other property, real or personal, he might possess. Furthermore, it cannot be said that the allegedly injured party is wholly without remedy. The appeal to the administrative agency itself, when not delayed by the possible effect of an attempt to litigate the same issues in court, is a far from perfunctory affair; and, in the event the cancellation order is sustained, the Administrative Procedure Act offers relief by way of a limited court review. Suit against the Government may lie in the Court of Claims. 28 U.S.C. § 1491. Nor is it to be assumed that the executive branch

of the Government will condone or overlook such acts of dishonesty and malice by officials charged with the performance of such duties as those exercised by the defendants.

Moreover, we see no reason to doubt that the reasons of policy described by Judge Learned Hand in Gregoire v. Biddle, supra, afford protection to federal officials of less than exalted or even less than high rank in the hierarchy of officialdom, as it is not improbable that officials such as these defendants might well feel the pressure of possible lawsuits and personal liabilities quite as much as would those officials who are more in the public eye and whose duties might be deemed more onerous or more important to the public welfare. Such comparisons are odious and unprofitable. The basic reason for the rule remains the same; and a sound policy would seem to place on level ground all official duties involving the exercise of judgment and discretion.

Gustavsson urges upon us numerous reasons for holding that the rule of Gregoire v. Biddle, supra, is not applicable to the facts of this case as alleged. We find no merit in any of them. We assume, *arguendo,* as we must, that, as claimed, the defendants acted "with intent to harm and injure the plaintiff, knowingly, intentionally and wilfully." It is clear and uncontested, however, that reports on the performance of Government contracts are made in the course of defendants' jobs, and it necessarily follows that the reports complained of, which were reports of this character, were made within the scope of their official duties. Gustavsson asserts that this is not so, because the Government had not and could not authorize such tortious behavior, and defendants "did not have the authority to act to injure and damage" a person contracting to do construction work for the Government. The result of this proposed distinction would be that the immunity doctrine would be applicable only when plaintiffs fail to allege tortious conduct. As this Court held in Gregoire v. Biddle, supra, 177 F.2d at page 581, such a limitation would defeat the whole doctrine, "what is meant by saying that the officer must be acting within his power cannot be more than that the occasion must be such as would have justified the act, if he had been using his power for any of the purposes on whose account it was vested in him." See Barr v. Matteo, 1959, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed. 2d 1434.

Gustavsson asserts that the doctrine is applicable only to Government officials who must exercise "discretion," as opposed to those whose functions are "ministerial," and that defendants' functions are "ministerial." There is no litmus paper test to distinguish acts of discretion, compare Dalehite v. United States, 1953, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427, with Hatahley v. United States, 1956, 351 U.S. 173, 76 S.Ct. 745, 100 L. Ed. 1065; see 2 Harper & James, Torts, § 29.14 at 1658 (1956), and to require a finding of "discretion" would merely postpone, for one step in the process of reasoning, the determination of the real question—is the act complained of the result of a judgment or decision which it is necessary that the Government official be free to make without fear or threat of vexatious or fictitious suits and alleged personal liability? Those responsible for inspecting and reporting on the performance of Government contracts must act with such freedom. It is much more than a mere possibility that many would be unable freely and honestly to perform their duties if they knew they might be subjected to the risk of trial and personal liability based on an unfavorable report which the ousted contractor might find it easy to claim was "false," and hence "malicious."

With respect to the argument that "where the Government steps down * * * to the market place, it cannot invoke its governmental privileges and it follows that its employees in the market place are not entitled to * * * immunity," it does not "follow," and besides Gustavsson's premise is not correct, see Hart & Wechsler, The Federal Courts and the Federal System 109 n. 1

(1953); compare 2 Harper & James, Torts § 29.6 (1956). Furthermore, even if a line could be drawn between the Government's "governmental" and "commercial" activities, the policy of the immunity doctrine is applicable to both, and, we are far from convinced that contracting for construction of the hutment in this case was not a governmental function.

■ There is no merit whatever in Gustavsson's contention that, since the contract was cancelled without a hearing before "the Assistant Commissioner," who apparently authorized the termination, he was deprived of property without due process of law.

There remains to be considered those exceptional cases in which Government officials were said to be subject to suit for their torts. Philadelphia Company v. Stimson, 1912, 223 U.S. 605, 619–620, 32 S.Ct. 340, 56 L.Ed. 570; Scranton v. Wheeler, 1900, 179 U.S. 141, 152, 21 S. Ct. 48, 45 L.Ed. 126; Belknap v. Schild, 1896, 161 U.S. 10, 18, 16 S.Ct. 443, 40 L. Ed. 599; United States v. Lee, 1882, 106 U.S. 196, 200–221, 1 S.Ct. 240, 27 L.Ed. 171; Little v. Barreme, 1804, 2 Cranch 170, 2 L.Ed. 243; cf. Tindal v. Wesley, 1897, 167 U.S. 204, 17 S.Ct. 770, 42 L.Ed. 137 (state officials). This exception appears to have encompassed only situations in which either the official exceeded his authority or it was not validly conferred, Yearsley v. W. A. Ross Construction Co., 1940, 309 U.S. 18, 21, 60 S.Ct. 413, 84 L.Ed. 554; Banco De Espana v. Federal Reserve Bank, 2 Cir., 1940, 114 F.2d 438, and, therefore, is inapplicable to Gustavsson's claim. Even if the exceptional case required merely "a specific res held in the guise of public authority, but claimed by the plaintiff on the basis of a title superior to that of the sovereign * * * [and] a plaintiff may obtain his own property, real or personal, even from the agents of the sovereign itself," Banco De Espana v. Federal Reserve Bank, supra, at page 447, it remains consistent with the policy behind the immunity doctrine since the official defendant does not face the risk of personal liability. And,

assuming *arguendo*, that, as Gustavsson asserts, its contract right was a "property right," its claim would not come within this exception since no tangible property is involved and personal liability is the sole aim and goal of this lawsuit.

Sound public policy, and established law, require that the summary judgment dismissing Gustavsson's second claim for relief in this action be affirmed.

The acts complained of clearly were performed under "color of office," 28 U. S.C. § 1442(a) (1), and, therefore, the refusal to remand was not error.

Affirmed.

WATERMAN, Circuit Judge (concurring in the result).

I concur in the result reached by my colleagues. I do so because the plaintiff's allegations of wrongdoing demonstrate that the alleged tortious acts of these particular defendants not only occurred in the necessary course of their obviously important official duties as contracting officers of the General Services Administration but were acts required of them if they were conscientiously to perform those duties.

I do not fully join in the majority opinion, however, for in these days of greatly expanded governmental commercial activity and increased governmental payrolls, I question the wisdom of flatly holding that the law grants immunity from personal tort liability to all governmental employees performing official duties that can be represented by the actors to be duties involving the exercise of judgment and discretion. This I understand to be the rationale of the majority opinion.

All jobs, even the most routine government ones, require the jobholder to exercise some degree of judgment and discretion on the job. A rational doctrine originally evolved to protect high-ranking policy-making administrative officers of our Government should not be extended to cloak with immunity all government employees.