**Webster BIVENS, Plaintiff-Appellant,**

**v.**

**SIX UNKNOWN NAMED AGENTS OF the FEDERAL BUREAU OF NARCOTICS, Defendants-Appellees.**

**No. 422, Docket 32537.**

United States Court of Appeals, Second Circuit.

Argued Dec. 3, 1971.

Decided March 8, 1972.

Lumbard, Circuit Judge, concurred in result and filed opinion.

Stephen A. Grant, New York City, for plaintiff-appellant.

Walter H. Fleischer, Dept. of Justice, Washington, D. C. (L. Patrick Gray, III, Asst. Atty. Gen., Thomas J. Press, Dept. of Justice, Washington, D. C., and Robert A. Morse, U. S. Atty., for the E. D. N. Y., Brooklyn, N. Y. on the brief), for defendants-appellees.

Before MEDINA, LUMBARD and WATERMAN, Circuit Judges.

MEDINA, Circuit Judge:

The decision of the Supreme Court (403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) ) establishes for the first time since the founding of the Republic the federal common law right of an aggrieved person to sue for damages caused by a violation of the Fourth Amendment guarantee against unreasonable searches and seizures. Obeying the mandate of the remand we must now decide the important and highly controversial question whether the acts of these Federal Bureau of Narcotics Agents are clothed with immunity, and, if not, to formulate the standard which judges and juries are to apply in deciding the issue of the liability of such officers to pay damages to an allegedly wronged plaintiff.

The decisional background against which we must answer these questions is extensive, conflicting and complex. We must take into consideration: (1) the theoretical basis for immunity of federal officials generally; (2) the impact of the Civil Rights Act, Section 1983, 42 U.S.C. Section 1983 (1970), which does not apply to federal but only to state officers, and the desirability of formulating a federal rule that applies on the same terms to both state and federal police officers; and (3) the rule of liability of a police officer at common law.

We have concluded and now decide and hold that it is a principle of federal law that Agents of the Federal Bureau of Narcotics, and other federal police officers such as Agents of the FBI performing similar functions, while in the act of pursuing alleged violators of the narcotics laws or other criminal statutes, have no immunity to protect them from damage suits charging violations of constitutional rights. We further hold, however, that it is a valid defense to such charges to allege and prove that the federal agent or other federal police officer acted in the matter complained of in good faith and with a reasonable belief in the validity of the arrest and search and in the necessity for carrying out the arrest and search in the way the arrest was made and the search was conducted.

The following is Mr. Justice Brennan's summary of the case, 403 U.S. at 389–390, 91 S.Ct. at 2001:

This case has its origin in an arrest and search carried out on the morning of November 26, 1965. Petitioner's complaint alleged that on that day respondents, agents of the Federal Bureau of Narcotics acting under claim of federal authority, entered his apartment and arrested him for alleged narcotics violations. The agents manacled petitioner in front of his wife and children, and threatened to arrest the entire family. They

searched the apartment from stem to stern. Thereafter, petitioner was taken to the federal courthouse in Brooklyn, where he was interrogated, booked, and subjected to a visual strip search.

On July 7, 1967, petitioner brought suit in Federal District Court. In addition to the allegations above, his complaint asserted that the arrest and search were effected without a warrant, and that unreasonable force was employed in making the arrest; fairly read, it alleges as well that the arrest was made without probable cause. Petitioner claimed to have suffered great humiliation, embarrassment, and mental suffering as a result of the agents' unlawful conduct, and sought $15,000 damages from each of them. The District Court dismissed the complaint, holding that: (1) there is no right of action under the Fourth Amendment; and (2) even if there is such a right of action, defendants, being federal agents, are immune from suit. 276 F.Supp. 12 (E.D.N.Y.1967). We affirmed on the basis of the first ground and, therefore, did not pass on the immunity question. 409 F.2d 718 (2d Cir. 1969). The Supreme Court reversed, holding that a valid claim for relief had been stated, and remanded the case to us for a determination of the immunity question. 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

### I

### Immunity

■ It has long been the rule in this country that certain officers of the federal government, acting in their official capacities, are absolutely immune from lawsuits. Thus, Bradley v. Fisher, 80 U.S. 335, 13 Wall. 335, 20 L.Ed. 646 (1871), held that judges enjoy an absolute immunity. This protection was extended to officers of the executive branch [1] in Spalding v. Vilas, 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780 (1896).

The classic modern case on the subject is Gregoire v. Biddle, 177 F.2d 579 (2d Cir. 1949), cert. denied, 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950), where Judge Learned Hand held that two successive Attorneys General of the United States, two successive Directors of the Enemy Alien Control Unit of the Department of Justice, and the District Director of Immigration at Ellis Island had immunity from civil suits brought against them for acts done in their official capacities. Noting that it was intolerable not to compensate wrongs done by public officials, Judge Hand nevertheless found that this consideration was outweighed by the public interest in having government officials perform their duties fearlessly. Few public officials, Judge Hand reasoned, would perform their functions vigorously if they knew they might have to bear the burden of standing trial and defending their actions. This immunity was absolute, moreover, and was upheld even if malice was alleged.

In Barr v. Matteo, 360 U.S. 564, 79 S. Ct. 1335, 3 L.Ed.2d 1434 (1959) the Supreme Court adopted the reasoning of Judge Hand and held that the Acting Director of the Office of Rent Stabilization could not be sued for issuing an allegedly libelous press release. The plurality opinion, written by Mr. Justice Harlan,[2] first focused on the nature of the defendant. Stating that one must look to the duties performed by the officer, not to his title or place in the hierarchy, Mr. Justice Harlan held that an official is immune if he performs "discretionary acts at those levels of govern-

---

1. Legislative immunity was provided for in Art. I, § 6 of the Constitution.

2. Significantly, perhaps, Mr. Justice Harlan said in his concurring opinion in Bivens:

But, while I express no view on the immunity defense offered in the instant case, I deem it proper to venture the thought that at the very least such a remedy would be available for the most flagrant and patently unjustified sorts of police conduct. 403 U.S. at 411, 91 S.Ct. at 2012.

ment where the concept of duty encompasses the sound exercise of discretionary authority." 360 U.S. at 575, 79 S. Ct. at 1341. Once an official is found to be exercising this kind of discretion, the act complained of must be "within the outer perimeter of [the official's] line of duty" before the official will be granted immunity. 360 U.S. at 575, 79 S.Ct. at 1341. Other cases dealing with this subject have proceeded on one or both of these grounds.

■ Thus we have two issues to resolve, both on the face of the allegations of the complaint: (1) taking these allegations to be true, as we must, is there a showing that the Narcotics Agents were acting "within the outer perimeter of [their] line of duty"; and, if so, (2) were they alleged to be performing the type of "discretionary" function that entitles them to immunity from suit. There is no allegation of malice in this complaint.

■ We hold that what these Narcotics Agents are charged with, despite the allegations of illegality because of lack of a warrant and probable cause, and the use of unnecessary force, is precisely what Narcotics Agents are supposed to do, namely, make arrests in narcotics cases. So we hold they were alleged to be acting "within the outer perimeter of [their] line of duty." But we reject the claim of immunity because we do not agree that the Agents were alleged to be engaged in the performance of the sort of "discretionary" acts that require the protection of immunity. In the latter part of this opinion we discuss and support the defense of good faith and reasonable belief that the arrest and search were lawful and reasonable.

### A

#### Scope of Authority

In Spalding v. Vilas, *supra*, 161 U.S. 483, 498, 16 S.Ct. 631, 637 (1896) the Supreme Court said that an official is within the scope of his authority if his "action[s] [have] more or less connection with the general matters committed by law to his control or supervision." Judge Hand, in Gregoire v. Biddle, *supra*, 177 F.2d 579, 581 (2d Cir. 1949), cert. denied, 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950), phrased it this way:

> What is meant by saying that the officer must be acting within his power cannot be more than that the occasion must be such as would have justified the act, if he had been using his power for any of the purposes on whose account it was vested in him.

In Bradley v. Fisher, *supra*, 80 U.S. 335, 351, 13 Wall. 335, 351 (1871), the Court defined the scope of a judge's immunity by noting that "[a] distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject-matter."

Finally, in Barr v. Matteo, *supra*, 360 U.S. 564, 575, 79 S.Ct. 1335, 1341 (1959), the Court said an act is within the scope of an official's authority if such act is "within the outer perimeter of [his] line of duty." [3]

It is not surprising that subsequent courts have had trouble grappling with this concept. Depending on whether the court takes a broad view or a narrow one concerning scope of authority, the same act by the same kind of official may be characterized as within the scope of his authority by one court, and without the scope of his authority by another.

In Hughes v. Johnson, 305 F.2d 67 (9th Cir. 1962), a federal game warden, accused of conducting a search without a warrant and unsupported by an arrest, was denied immunity because such acts are beyond the scope of his official duties. Similarly, in Kelley v. Dunne, 344 F.2d 129 (1st Cir. 1965), a Postal Inspector was held liable for entering a

3. Interestingly, Mr. Justice Stewart dissented because he did not believe that the issuing of a libelous press release was "'action in the line of duty.'" 360 U.S. at 592, 79 S.Ct. at 1347.

house without a warrant, restraining plaintiff's wife, and taking certain property, because such acts were deemed to be beyond the scope of his authority. Kozlowski v. Ferrara, 117 F.Supp. 650 (S.D.N.Y.1954), held that an FBI agent was liable for false arrest and malicious prosecution because such acts exceeded his authority, and because it was held that the immunity doctrine only applies to higher officials.

Using similar reasoning, other courts have come to opposite results. Norton v. McShane, 332 F.2d 855 (5th Cir. 1964), involved an action against several federal officers, including a U.S. Marshal, for unlawful arrest and detention without probable cause. Holding that all of the defendants were immune, the court said:

> [W]e must assume that to the extent the defendants allegedly acted overzealously or maliciously, they were nevertheless acting within the outer perimeter of their line of duty, and the alleged acts had more or less connection with the general matters committed by law to their control and supervision. 332 F.2d at 861–862.

The dissenting judge believed that the acts complained of could not be within the defendants' scope of authority.[4]

Cooper v. O'Connor, 69 App.D.C. 100, 99 F.2d 135, cert. denied, 305 U.S. 643, 59 S.Ct. 146, 83 L.Ed. 414 (1938), involved an action against several federal officials, including a Special Agent of the FBI, for malicious prosecution. All defendants were held to be immune from suit because they were acting within the scope of their authority. Scope of authority was said to mean actions having more or less connection with the general matters committed by law to the control or supervision of the officer.[5] This definition and reasoning have been followed by other courts. See Swanson v. Willis,

114 F.Supp. 434 (D.Alaska 1953), aff'd, 220 F.2d 440 (9th Cir. 1955) (U.S. Marshal accused of false arrest and battery); Hartline v. Clary, 141 F.Supp. 151 (E.D.S.C.1956) (Internal Revenue Agents accused of false arrest and assault); Bershad v. Wood, 290 F.2d 714 (9th Cir. 1961) (Internal Revenue Agents accused of wrongfully levying on plaintiff's bank account); Scherer v. Brennan, 379 F.2d 609 (7th Cir.), cert. denied, 389 U.S. 1021, 88 S.Ct. 592, 19 L.Ed.2d 666 (1967) (Treasury Agents, assigned to protect the President, accused of trespass and unlawful interference with plaintiff's right to have access to and to occupy his place of residence).

Easy solutions of complex legal problems are not only inadequate but they are likely to impinge upon fundamental principles, and this would inevitably fog up the consideration later of other as yet undecided questions of the applicability of the immunity doctrine to a variety of other federal officials. If we were to hold in this case that the mere allegation of lack of probable cause for the search and for the arrest was sufficient, as a matter of pleading, to charge the defendants with acting beyond "the outer perimeter of [their] line of duty," we would completely subvert Judge Hand's statement in Gregoire v. Biddle, *supra*, 177 F.2d 579, 581 (2d Cir. 1949), cert. denied, 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950), that the policy behind the immunity doctrine is to protect an official who "may later find himself hard put to it to satisfy a jury of his good faith." Such a holding would throw all cases of this description into the trial courts, without any consideration of the much more vital question of whether the official duty in the performance of which the defendant was engaged was or was not deemed to be worthy of the protection of immunity.

---

4. There is doubt as to the continuing vitality of the case in the Fifth Circuit. See Anderson v. Nosser, 438 F.2d 183, 205 (5th Cir. 1971) (Bell, J., concurring specially), rehearing en banc granted, 438 F.2d 205.

5. This is the way the Supreme Court defined the term in Spalding v. Vilas, *supra*, 161 U.S. 483, 498, 16 S.Ct. 631 (1896).

The critical question of the character of the official duties of the defendants would be eliminated from the cases. We cannot agree that such a holding would be a proper interpretation of the Supreme Court holdings and *Gregoire*, that we have discussed, or that it would be wise policy as a matter of good jurisprudence. It is better, we think, to come to grips with every phase of the problem, as a matter of legal reasoning, rather than to rely upon an unsupported *ipse dixit* as many courts seem to have done.

Thus we return to the old case of Spalding v. Vilas, *supra*, 161 U.S. 483, 498, 16 S.Ct. 631, 637 (1896), where the Supreme Court said:

> [W]e recognize a distinction between action taken by the head of a Department in reference to matters which are manifestly or palpably beyond his authority, and action having more or less connection with the general matters committed by law to his control or supervision.

■ Clearly, in the present case, the allegations in the complaint could not support a finding that the officers acted "manifestly or palpably beyond [their] authority." We believe that what is meant by the phrase "within the outer perimeter of [an officer's] line of duty" is that the officer must have been acting in his role as a government officer. Here, the duties of these defendants include making arrests in cases involving narcotics. They were doing just that. We hold that this is sufficient to satisfy the requirement that they be acting within "the outer perimeter of [their] line of duty."

## B

### Discretionary Functions

Once it has been established that the officers were acting within the scope of their authority, in order to be immune they must show that they perform "discretionary acts at those levels of government where the concept of duty encompasses the sound exercise of discretionary authority." Barr v. Matteo, *supra*, 360 U.S. 564, 575, 79 S.Ct. 1335, 1341 (1959).

In trying to apply this test to facts similar to those in the present case, some courts have simply said that the immunity doctrine only applies to high officials, not to officials performing police functions. See *e. g.*, Kozlowski v. Ferrara, *supra*, 117 F.Supp. 650 (S.D. N.Y.1954). This solution is, however, unsatisfactory. As Mr. Justice Harlan pointed out in *Barr*:

> The privilege is not a badge or emolument of exalted office, but an expression of a policy designed to aid in the effective functioning of government. The complexities and magnitude of governmental activity have become so great that there must of necessity be a delegation and redelegation of authority as to many functions, and we cannot say that these functions become less important simply because they are exercised by officers of lower rank in the executive hierarchy.
>
> \* \* \* It is not the title of his office but the duties with which the particular officer sought to be made to respond in damages is entrusted— the relation of the act complained of to "matters committed by law to his control or supervision," \* \* \* which must provide the guide in delineating the scope of the rule which clothes the official acts of the executive officer with immunity from civil defamation suits. 360 U.S. at 572– 574, 79 S.Ct. at 1340–1341.

The question to which we must address ourselves now is, therefore, do the defendants in this case perform duties that may be termed discretionary?

In deciding this question, however, words such as "discretion" are not particularly helpful. As we said in Ove Gustavsson Contracting Co. v. Floete, 299 F.2d 655, 659 (2d Cir. 1962), cert.

denied, 374 U.S. 827, 83 S.Ct. 1862, 10 L.Ed.2d 1050 (1963):

> There is no litmus paper test to distinguish acts of discretion, * * * and to require a finding of "discretion" would merely postpone, for one step in the process of reasoning, the determination of the real question—is the act complained of the result of a judgment or decision which it is necessary that the Government official be free to make without fear or threat of vexatious or fictitious suits and alleged personal liability?

Thus, the real question to be asked is whether or not federal officers performing police duties warrant the protection of the immunity defense. We hold that they do not.

This policy decision has been expressed by courts in terms of "discretion"—making an arrest is not deemed to be a discretionary function. See *e. g.*, Carter v. Carlson, 144 U.S.App.D.C. 388, 447 F.2d 358 (1971), cert. granted sub nom. District of Columbia v. Carter, 404 U.S. 1014, 92 S.Ct. 683, 30 L.Ed. 2d 661 (Jan. 10, 1972); Sherbutte v. Marine City, 374 Mich. 48, 130 N.W.2d 920 (1964); Jaffe, Suits Against Governments and Officers: Damage Actions, 77 Harv.L.Rev. 209, 218–19 (1963). "The tendency to hold a public official accountable appears to increase as the discretionary scope of his duties decrease. Hence, police officials, whose job is to enforce the law, are not given immunity." Note, Immunity of Prosecuting Officials From Suit for Alleged Deprivation of Civil Rights, 40 Temp.L. Q. 244, 250 (1967). Mr. Justice Harlan used similar reasoning in *Barr*, where he said that "the broader the range of responsibilities and duties, * * * the wider the scope of discretion * * *." 360 U.S. at 573, 79 S.Ct. at 1340. Whereas it is true that a police officer must exercise some discretion in making an arrest, the fiction that this act is not discretionary is maintained because of the belief that the benefit to society derived from the protection of personal liberties outweighs the detriment of perhaps deterring vigorous police action. See Developments in the Law—Remedies Against the United States and its Officials, 70 Harv.L.Rev. 827, 835 (1957). Consequently, "[t]he common law has never granted police officers an absolute and unqualified immunity * * *." Pierson v. Ray, 386 U.S. 547, 555, 87 S.Ct. 1213, 1218, 18 L. Ed.2d 288 (1967). See also K. Davis, Administrative Law Treatise § 26.03 at 874–5 (Supp.1970).

The policy underlying this common law rule is equally applicable to federal police officers. We believe the long line of cases culminating in Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L. Ed. 652 (1914), and Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), indicates a woeful laxity on the part of some police officers, state and federal, in complying with constitutional standards, and this laxity would only be encouraged by a grant of immunity. We do not agree with the reasoning of cases that support a contrary conclusion. It would be a sorry state of affairs if an officer had the "discretion" to enter a dwelling at 6:30 A.M., without a warrant or probable cause, and make an arrest by employing unreasonable force.

■ There is another reason for not granting immunity here. In suits brought under the Civil Rights Act, Section 1983, 42 U.S.C. Section 1983 (1970), police officers enjoy no immunity. Pierson v. Ray, *supra*, 386 U.S. 547, 87 S.Ct. 1213 (1967). The Civil Rights Act does not, however, apply to federal officers. Norton v. McShane, *supra*, 332 F.2d 855 (5th Cir. 1964).

In its decision in this case, the Supreme Court recognized a right of action against federal officers that is roughly analogous to the right of action against state officers that was provided when Congress enacted the Civil Rights Act. It would, we think, be incongruous and confusing, to say the least, if we should rule that under one phase of federal law a police officer had immunity and that

under another phase of federal law he had no immunity. This incongruity has been commented upon by Judge Gibbons in the Third Circuit, when considering "the liability of State prosecutors under the Civil Rights Act and the liability of federal prosecutors under the federal common law created by the *Bivens* decision." Judge Gibbons said he perceived "no reason for such a distinction." Bethea v. Reid, 445 F.2d 1163, 1166 (3d Cir. 1971), cert. denied, 404 U.S. 1061, 92 S.Ct. 747, 30 L.Ed.2d 749 (Jan. 24, 1972).

The absurdity we refer to is highlighted by the interesting situation that arose in Carter v. Carlson, *supra*, 144 U.S.App.D.C. 388, 447 F.2d 358 (1971), cert. granted sub nom. District of Columbia v. Carter, 404 U.S. 1014, 92 S.Ct. 683, 30 L.Ed. 661 (Jan. 10, 1972), which involved the immunity *vel non* of District of Columbia police officers in a Section 1983 suit. Whereas federal officials do not come under Section 1983, District of Columbia officials do. Fortunately, the incongruity of conflicting rulings was avoided when the District of Columbia Circuit ruled that there was no immunity. As Judge Nichols commented in his concurring opinion (447 F.2d at 371, 144 U.S.App.D.C. at 401):

> I do not think that a Federal officer not subject to § 1983 by its terms, and sued in tort at common law, should be held to enjoy an immunity denied his state or territorial brother similarly situated.

This same anomaly is noted in Judge Bell's concurrence in Anderson v. Nosser, *supra*, 438 F.2d 183, 205 (5th Cir. 1971), rehearing en banc granted, 438 F.2d 205.

 Accordingly, we hold that the Agents in this case are not immune from damage suits based upon allegations of violations of constitutional rights.

## II

*It is a Defense to Allege and Prove Good Faith and Reasonable Belief that the Arrest and Search Were Lawful and Reasonable*

Having ruled against immunity, we must not be unmindful of the fact that these FBI and Narcotics Agents, whose lives are in constant danger (see concurring opinion in United States v. Steward, 451 F.2d 1203, 1208 (2d Cir. 1971) ) perform functions indispensable to the preservation of our American way of life. They must not be left defenseless against the demands of every person who manages to escape from the toils of the criminal law. We must, however, balance this consideration against the right of citizens to be free from unlawful arrests and searches, and arrests and searches carried out in an unreasonable manner.

At common law the police officer always had available to him the defense of good faith and probable cause, and this has been consistently read as meaning good faith and "reasonable belief" in the validity of the arrest or search. Restatement (Second) of Torts § 121(b) (1965); 1 Harper & James, The Law of Torts § 3.18 at 277 (1956). Similarly, the use of force is not privileged if in excess of that which the actor "reasonably believes to be necessary." Restatement (Second) of Torts § 132 (1965).

It is of special interest in this case that the authority of agents of the Federal Bureau of Narcotics is spelled out by statute. According to 26 U.S.C. Section 7607, agents of the Federal Bureau of Narcotics may:

> (2) make arrests without warrant for violations of any law of the United States relating to narcotic drugs * * * or marihuana * * * where the violation is committed in the presence of the person making the arrest or where such person has reasonable grounds to believe that the person to be arrested has committed or is committing such violation.

We believe this to be the same defense held applicable to cases arising under Section 1983. Pierson v. Ray, *supra*, 386 U.S. 547, 87 S.Ct. 1213 (1967).

The numerous dissents, concurrences and reversals, especially in the last decade, indicate that even learned and experienced jurists have had difficulty in defining the rules that govern a determination of probable cause, with or without a warrant. See e. g., Vale v. Louisiana, 399 U.S. 30, 90 S.Ct. 1969, 26 L. Ed.2d 409 (1970); Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). As he tries to find his way in this thicket, the police officer must not be held to act at his peril.

█ Therefore, to prevail the police officer need not allege and prove probable cause in the constitutional sense. The standard governing police conduct is composed of two elements, the first is subjective and the second is objective. Thus the officer must allege and prove not only that he believed, in good faith, that his conduct was lawful, but also that his belief was reasonable. And so we hold that it is a defense to allege and prove good faith and reasonable belief in the validity of the arrest and search and in the necessity for carrying out the arrest and search in the way the arrest was made and the search was conducted. We think, as a matter of constitutional law and as a matter of common sense, a law enforcement officer is entitled to this protection.

### III

*No Remand for Further Fact Finding*

Having been satisfied with the present record when the case came before Judge Bruchhausen in the District Court, also when it was before us on the prior appeal and before the Supreme Court, the Government now seems to think we should remand the case for some vague form of fact finding. We disagree. Any such unorthodox procedure would introduce a new and quite unnecessary form of pretrial and it could not fail to becloud the issues. What we now do is pass upon the sufficiency of the complaint. We find it states a claim for relief and the judgment dismissing the complaint is reversed and the case is remanded to the District Court for further proceedings not inconsistent with this opinion.

We are grateful to Stephen A. Grant, Esq., who, as assigned counsel, has admirably and with great professional skill represented appellant both in the Supreme Court and in this Court.

LUMBARD, Circuit Judge (concurring):

I concur in the result, but wish to set out my understanding of what the court does today.

In future cases of this sort the issue of scope of authority will not be relevant inasmuch as we now hold that federal law enforcement agents are not immune even if acting within their powers. The trial judge will pass on the sufficiency of the complaint just as he would in a section 1983 action against a state police officer. If the complaint states a cause of action and the plaintiff adduces substantiating proof, the defendant will have to disprove the allegation that he acted without probable cause, or show that, in any event, he acted in good faith and with a reasonable belief in the validity of the arrest and search.

Ordinarily when a suit of this type is brought a court will already have determined that there was no probable cause for the arrest and search complained of. Nevertheless the agent has a complete defense if he can convince the trier of the fact that he acted in good faith and that it was reasonable for him to have believed that the arrest and search were lawful. Thus there are two standards to be considered. The first is what constitutes reasonableness for purposes of defining probable cause under the fourth amendment for the protection of citizens against governmental overreaching. The other standard is the less stringent

reasonable man standard of the tort action against government agents. This second and lesser standard is appropriate because, in many cases, federal officers cannot be expected to predict what federal judges frequently have considerable difficulty in deciding and about which they frequently differ among themselves. It would be contrary to the public interest if federal officers were held to a probable cause standard as in many cases they would fail to act for fear of guessing wrong. Consequently the law ought to, and does, protect government agents if they act in good faith and with a reasonable belief in the validity of the arrest and search.