**Warren LASSIN**

v.

**Curtis W. TARR, Individually and as National Director of the Selective Service System, Robert D. Ford, Individually and as State Director of the Selective Service System.**

**Civ. A. No. 72–500.**

United States District Court,
E. D. Pennsylvania.

Nov. 7, 1972.

1

David Rudovsky, Philadelphia, Pa., for plaintiff.

Richard R. Galli, Asst. U. S. Atty., Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION

WEINER, District Judge.

In our previous opinion in this case, dated August 21, 1972, we determined that the summary procedure employed by the defendants in removing plaintiff Lassin from his position as a member of Selective Service Local Board No. 134, Philadelphia, Pennsylvania, was invalid for lack of due process and that this removal was actionable and survived Lassin's subsequent restoration to this position.

The question now placed before this Court for the first time by the defendants' motion for summary judgment and by plaintiff's cross-motion is whether the actions of the National and State Selective Service Directors in summarily and illegally removing a local board member from his office are clothed with immunity.

The facts which are relevant for the purposes of these motions are the following: Warren Lassin was appointed to serve as a member of Selective Service Local Board No. 134, Philadelphia, Pennsylvania, on January 8, 1972. On February 1, 1972, the day after he was administered the oath of office, Lassin appeared on a local television station and expressed his opposition to the Vietnam War and to the draft system and stated his opinion that deferments should be given to all registrants who requested them. Although Lassin contends that his remarks were taken out of context and that he advised defendant Ford that he would perform his duties as required by his oath and would not let his personal feelings interfere with his official decisions, he was informed by a letter from defendant Tarr on February 16, 1972 that he was being removed as a Board member due to the aforementioned remarks and at the request of defendant Ford.

The landmark decision on the subject of immunity is Judge Learned Hand's oft-quoted decision in Gregoire v. Biddle, 177 F.2d 579 (2d Cir. 1949), cert. denied, 339 U.S. 949, 70 S.Ct. 803, 94 L. Ed. 1363 (1950), where he enunciates the basic doctrine of governmental immunity:

"It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. There must

indeed be means of punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation. . . .

"The decisions have, indeed, always imposed as a limitation upon the immunity that the official's act must have been within the scope of his powers; and it can be argued that official powers, since they exist only for the public good, never cover occasions where the public good is not their aim, and hence that to exercise a power dishonestly is necessarily to overstep its bounds. A moment's reflection shows, however, that that cannot be the meaning of the limitation without defeating the whole doctrine. What is meant by saying that the officer must be acting within his power cannot be more than that the occasion must be such as would have justified the act, if he had been using his power for any of the purposes on whose account it was vested in him. . . ." *Id.* at 581.

In Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), the Supreme Court accepted Judge Hand's reasoning and held, in a plurality opinion, that an official is immune from suit if he performs "discretionary acts at those levels of government where the concept of duty encompasses the sound exercise of discretionary authority." *Id.* at 575, 79 S.Ct. at 1341. If such discretion is exercised, the act complained of must be "within the outer perimeter of [the official's] line of duty" before the official will be granted immunity. *Id.*

Therefore, it becomes necessary for us to resolve (1) whether the defendants were acting "within the outer perimeter of [their] line of duty"; and, if so, (2) whether they were performing the type of "discretionary" function that entitled them to immunity from suit.

It is our conclusion that the actions of the defendants, under the specific facts of this case, were within the scope of their official authority and that the defendants were engaged in the performance of the type of "discretionary" acts that require the protection of governmental immunity.

In reaching our conclusion that immunity is applicable in this case, we have adopted a broad view of the immunity doctrine. In Bivens v. Six Unknown Named Agents Of Federal Bureau of Narcotics, 456 F.2d 1339 (2 Cir. 1972), Judge Medina, in discussing the concept of scope of authority, noted that, as a result of the general language which the courts have used in discussing the elements of immunity, the decisions, in most instances, turn on "whether the court takes a broad view or a narrow one concerning scope of authority." *Id.* at 1343. Unlike *Bivens*, where suit was brought against Narcotics agents for damages resulting from an illegal search and seizure, and *Barr*, where plaintiff although a government employee, was seeking damages resulting from an alleged defamatory press release and not from the fact of his suspension from employment, in this case we are faced with an action for damages which is predicated solely upon the removal of the plaintiff from office.

Innumerable decisions have expressed the reluctance of the federal courts to review executive decisions removing government employees from their positions. Rosenman v. Levbarg, 435 F.2d 1286 (3d Cir. 1970); Toohey v. Nitze, 429 F.2d 1332 (9th Cir.), cert. denied, Thomas v. Nitze, 400 U.S. 1022, 91 S.Ct. 585, 27 L.Ed.2d 633 (1970); Mendelson v. Macy, 123 U.S.App.D.C. 43, 356 F.2d 796 (1966); Jenkins v. Macy, 357 F.2d 62 (8th Cir. 1966); Cohen v. Ryder, 258 F.Supp. 693 (E.D.Pa.1966),

aff'd, 373 F.2d 530 (3d Cir. 1967); Kessler v. General Services Administration, 252 F.Supp. 629 (S.D.N.Y.1966). Essentially, these decisions would permit review of the initial removal only where the action taken could be characterized as arbitrary or capricious or where the required procedural steps were not taken prior to the removal. Therefore, we are constrained to recognize this area as being one almost solely within the control of the executive and, as a result, our approach to the case before us must be tempered by the presumption that the executive is entitled to substantial leeway prior to any determination that irregularities in the removal of an employee require the lifting of the cloak of immunity.

## I

### SCOPE OF AUTHORITY

There is little doubt that the defendants were acting within "the outer perimeter of [their] line of duty." Barr v. Matteo, *supra*, 360 U.S. at 575, 79 S. Ct. at 1341. The Selective Service Regulations, 32 C.F.R. § 1600 et seq., entrust the State and National Directors with a substantial amount of discretion in the exercise of their duties. Specifically, the National Director is granted the power of removal, 32 C.F.R. § 1603.6, and the State Director's request for removal is similarly encompassed in his authority to supervise the performance of the Selective Service System in the State. We do not, therefore, hesitate to conclude that the actions of the defendants could not support a finding that they acted "manifestly or palpably beyond [their] authority," Spalding v. Vilas, 161 U.S. 483, 498, 16 S.Ct. 631, 637, 40 L.Ed. 780 (1896); *see* Bivens v. Six Unknown Named Agents Of Federal Bureau of Narcotics, *supra*, 456 F.2d 1339,

1345. Tarr and Ford were engaged in activities which were expressly assigned to them and this fact alone is sufficient to satisfy the requirement that they were acting in connection with the general matters committed to their supervision and within the scope of their authority as officials of the government.

## II

### DISCRETIONARY FUNCTIONS

Under the language of Barr v. Matteo, *supra*, 360 U.S. at 575, 79 S.Ct. at 1341, once it is established that the officials were acting within the scope of their authority, they must show that they were performing "discretionary acts at those levels of government where the concept of duty encompasses the sound exercise of discretionary authority." Again, we feel confident in concluding that such discretion was exercised in this case. In other words, to paraphrase Judge Medina in Ove Gustavsson Contracting Co. v. Floete, 299 F.2d 655, 659 (2d Cir. 1962), cert. denied, 374 U.S. 827, 83 S.Ct. 1862, 10 L.Ed.2d 1050 (1963), the act complained of resulted from a judgment or decision which the government official must be free to make "without fear or threat of vexatious or fictitious suits and alleged personal liability." Executive officials, particularly those occupying positions as responsible and sensitive as do the defendants, must have, and in this case, by virtue of Congressional mandate, have been authorized to take those steps which they deem to be necessary to meet the obligations of their offices.

Defendant Ford was properly disturbed by the remarks of Lassin and his decision to request his removal was clearly one within his discretionary authority.[1] Director Tarr is specifically

---

1. The Selective Service Regulations established specific guidelines which employees of the system must adhere to in the performance of their duties. Section 1600.-735–20(6), (d), (e), and (f), provides that an employee shall avoid any action which might result in "[g]iving preferential treatment to any person"; "[l]osing complete independence or impartiality"; "[m]aking a government decision outside official channels"; or "[a]ffecting adversely the confidence of the public

empowered to remove from office any uncompensated employee of the Selective Service System, and his actions must also, by definition, be discretionary ones. 32 C.F.R. § 1603.6(a). Although the removal, in this case, was found to be illegal, this is exactly the type of situation for which the defense of immunity was designed. If the defense were to be denied in this instance, we would be hard pressed to discover circumstances in which the immunity doctrine would any longer be a viable defense to a suit for damages against government officials.

## III

### PLAINTIFF'S CLAIM THAT HIS RIGHTS UNDER THE FIRST AND FIFTH AMENDMENTS WERE VIOLATED AND THAT IMMUNITY SHOULD THEREFORE BE DENIED

This Court will not, as is apparently requested by the plaintiff, engage in a balancing of the doctrine of immunity against the First and Fifth Amendment rights of the plaintiff. The Second Circuit, in *Bivens, supra*, when faced with the defense of immunity in a claim for damages resulting from an illegal search and seizure, used the Fourth Amendment only as one guideline in their determination that defendant-narcotics officers were not engaged in a function which can be termed "discretionary."

A flagrant violation of constitutional rights, as was found to have taken place in Bivens, may justify the removal of the shield of immunity. In the case before us, however, a complete examination of the relevant factors surrounding the concept of immunity, including the constitutional arguments raised by the plaintiff, does not lead us to such a conclusion. Here, the constitutional claims do not outweigh the need for providing to government officials the protection necessary for them to adequately and efficiently carry out their statutory and constitutional duties.

in the integrity of the Government."

Defendant Ford's concern over the statement of Lassin and his resultant decision to request Lassin's removal appear quite reasonable to this Court in light of these regulations. His subsequent issuance of a press release detailing the events leading to his decision similarly appears to be a reasonable exercise of his discretion in light of his duties as ranking official in the State System and his responsibility to maintain the confidence of the public in the administration of the System.