The **HOME INDEMNITY COMPANY**

v.

**CONSOLIDATED DRESSED BEEF CO. et al.**

**Civ. A. No. 72–1090.**

United States District Court, E. D. Pennsylvania.

Feb. 2, 1973.

Alfred Sarowitz, Philadelphia, Pa., for plaintiff.

Lester H. Novack, Norman R. Bradley, Miles H. Shore, Philadelphia, Pa., for defendants.

## OPINION

BECHTLE, District Judge.

Plaintiff, The Home Indemnity Company, seeks a judgment on the pleadings under Rule 12(c), Fed.R.Civ.P.,[1] in its favor against Consolidated Dressed Beef Co. ("Consolidated"); four individual defendants, Samuel, Nathan, Reuben and Sidney Silverberg; and The First Pennsylvania Banking and Trust Company ("First Pennsylvania")[2] for the sum of $189,770.28, with interest from May 1, 1972, and costs. Consolidated, as its name indicates, is in the business of selling meat. Its place of business is at 3605 Grays Ferry Avenue, Philadelphia, Pennsylvania.

In its complaint, consisting of ten paragraphs, plaintiff alleges that on December 1, 1970, it, as surety, and Consolidated and the four Silverbergs, as indemnitors, executed a general indemnity agreement (Complaint, Exhibit "D") in which the latter agreed to indemnify the plaintiff for all sums which it shall pay on the indemnitors' behalf as a result of the agreement; that on the same day Consolidated, as principal, and plaintiff, as surety, executed and delivered to the B & O Railroad a bond (Complaint, Exhibit "A") for " 'Order Notify' and 'Advise' Shipments," in the face amount of $150,000,[3] to indemnify the railroad against certain losses on requests for payment due the railroad on shipments of merchandise to Consolidated; that in reliance on the bond, the railroad delivered meat under bills of lading to Consolidated at its place of business, demanded payments for them from Consolidated, but no payments were made; that following Consolidated's refusal to pay, the railroad demanded payment from plaintiff under the terms of the bond; and that on May 1, 1972, plaintiff paid the railroad $189,770.28, representing the amount due it for meat shipped to Consolidated and, in return, received from the railroad an assignment of its rights against Consolidated.

The plaintiff also avers in the complaint that, at all times material to this action, Consolidated was insolvent and that, by virtue of certain rights under agreements between Consolidated and First Pennsylvania, the latter took possession, control and supervised the affairs of Consolidated. Paragraph 8 of the complaint states: "During all said times, First [Pennsylvania] knew or should have known, realized or should have realized that Consolidated was insolvent and therefore unable to meet its obligations, including the obligations aforementioned. Moreover, at the time of the deliveries of said shipments, First [Pennsylvania] had been duly notified thereof and accepted said deliveries with full knowledge of the aforementioned facts and circumstances." Finally, in the last paragraph of the complaint, plaintiff avers it has "demanded that each and every defendant pay to it the amounts due by reason of the foregoing

1. The first sentence of this Rule provides: "(c) After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."

2. This defendant has been designated incorrectly in the caption of the Complaint as "The First Pennsylvania Company."

3. This amount during the life of the bond was increased to $300,000 on January 4, 1971, effective December 30, 1970 (Complaint, Exhibit "B").

facts . . . but none of them has paid any part thereof." [4]

All of the defendants have filed answers to the complaint. Neither a counterclaim (denominated as such) nor a cross-claim has been pleaded in the answers, and the Court has not ordered plaintiff to reply to the answers. Under Rule 7(a), Fed.R.Civ.P., the pleadings are closed and plaintiff's motion will not delay the trial if there is to be one. The motion is ripe for decision.

Answering the complaint, Consolidated and the four Silverbergs admit all the allegations of the complaint but deny any liability to plaintiff for the asserted reasons which they set forth as a second defense, as follows:

\*　\*　\*　\*　\*　\*

"12. Pursuant to its said agreement with Consolidated, and by virtue of its full and complete control of the business affairs and all the assets of Consolidated, the First Pennsylvania . . . having been on prior notice of the shipments reflected in the said bills of lading and having permitted and/or authorized the said shipments to Consolidated, was alone required and liable to make payment of sums due the said railroad in the premises but failed to do so."

\*　\*　\*　\*　\*　\*

Consolidated and the four Silverbergs do not claim that they gave plaintiff timely notice that Consolidated would not accept and pay for any shipment after a certain date. Their liability under the general indemnity agreement is a broad one. They promised to indemnify plaintiff and hold it harmless against "any and all demands, liabilities, losses, charges and expenses of every nature, which it shall have paid . . . by reason or in consequences of the execution" by it of any bond.

■ Plaintiff asserts that after the effective date of a bond they paid the railroad $189,770.28 for shipments of meat to Consolidated. Consolidated and

the four individual defendants do not deny the allegations of the complaint, which state a good cause of action against them under the general indemnity agreement and the bond. Consequently, plaintiff is entitled to judgment against them for $189,770.28, with interest from May 1, 1972.

In its answer, the remaining defendant, First Pennsylvania, avers that it was without knowledge of the transactions among the other parties to the action and the railroad but does admit that the latter delivered merchandise to Consolidated. However, it adds that the railroad did so without demanding or receiving the bills of lading authorizing delivery because they "accompanied sight drafts which were not paid." The bank goes on to allege that it did not believe Consolidated to be insolvent prior to January 10, 1972, and all of the merchandise was delivered prior to that time and that it never had possession and control of Consolidated as a going concern, nor has it ever had possession, control or supervision of "the affairs of Consolidated" at any time. It further adds that on January 11, 1972, it took possession of those assets on which it had secured liens for its loans to Consolidated. These included duly recorded mortgages on Consolidated's real estate and duly recorded financing statements on certain assets of Consolidated, including its inventory and accounts receivable, which it then proceeded to liquidate in reduction of its loans. It states further that the only so-called "supervision" of the affairs of Consolidated was limited to liquidation of those assets on and after January 11, 1972; that at no time did it take over the everyday operation of Consolidated's operations; that on January 11, 1972, all of the makers of drafts of which it knew were called and notified that the drafts had not been paid and probably would not be paid; and that it did not accept deliveries of anything on Consolidated's behalf. It adds, that plaintiff never demanded

4. The general indemnity agreement provides that suit under the agreement "may be brought against any or all indemnitors."

payment from it (prior to bringing this action) for merchandise shipped to Consolidated.

 When a party moves for judgment on the pleadings under Rule 12(c), as plaintiff has done here, for the purpose of the motion, all well pleaded material allegations of the opposing parties' pleading are to be taken as true, and all allegations of the moving party which have been denied are taken as false. National Metropolitan Bank v. United States, 323 U.S. 454, 456–457, 65 S.Ct. 354, 355, 89 L.Ed. 383 (1945); Lackawanna Beef Co. v. Adolf Gobel, Inc., 1 F.R.D. 538, 539 (M.D.Pa.1940); Air Engineering Metal Trades Council and Affiliated Unions, AFL-CIO v. ARO, Inc., 307 F.Supp. 934 (E.D.Tenn. 1969); 2A Moore's Fed.Pract. (2nd ed.) ¶ 12.15. Also see Dyson v. General Motors Corp., 298 F.Supp. 1064 (E.D. Pa.1969).

 First Pennsylvania is not a party to the indemnity agreement; and accepting its answering allegations as true for the purposes of the motion, there is no basis for its being held liable to plaintiff under Pennsylvania law, legal or equitable. First Pennsylvania may have benefited from the shipments of meat, for they increased the inventory of Consolidated. Because a secured creditor benefits from the fact that the debtor is permitted to remain in business by suppliers does not make that creditor liable to them for the value of the supplies. Had it not been for the bank loans, Consolidated may not have been able to do business, at least on the scale that it operated. Moreover, plaintiff was or should have been aware of the existence of the recorded mortgage and financing statements in favor of the bank.

Plaintiff is not entitled to judgment on the pleading against First Pennsylvania.

---

*The correct designation of this defendant is The First Pennsylvania Banking and Trust Company.

ORDER

And now, to wit, this 2nd day of February, 1973, it is ordered that plaintiff's motion for judgment on the pleadings against Consolidated Dressed Beef Co. and the four individual defendants, Samuel, Nathan, Reuben and Sidney Silverberg, for $189,770.28, with interest from May 1, 1972, is granted; and plaintiff's identical motion against the remaining defendant, The First Pennsylvania Company,* is denied.