**James Harvey JOHNSON, Appellee,**

**v.**

**Warden Noah ALLDREDGE and Corrections Officer Cronrath, Appellants.**

**No. 73-1177.**

United States Court of Appeals, Third Circuit.

Argued Sept. 26, 1973.

Decided Dec. 12, 1973.

Thomas J. Renehan, Jr., Philadelphia, Pa., for appellee.

Harlington Wood, Jr., Asst. Atty. Gen., S. John Cottone, U. S. Atty., Barbara L. Herwig, Walter H. Fleischer, Greer S. Goldman, Attys., Dept. of Justice, Washington, D. C., for appellants.

Before SEITZ, Chief Judge, and HUNTER and WEIS, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Chief Judge.

Plaintiff, a federal prisoner, brought this action under 28 U.S.C. § 1331 (1970) against the prison warden, Alldredge, and a prison guard, Cronrath, seeking $35,000 damages for the alleged unconstitutional taking of his property and interference with his access to the courts. Defendants moved for dismissal and both plaintiff and defendants moved for summary judgment. In support of their motions the defendants urged, *inter alia,* that they are immune from damage liability for their official acts. The District Judge denied the motions, declaring that plaintiff had stated a cause of action for damages and that there was at least one disputed material issue of fact: "whether Defendants were acting within the outer perimeter of their authority and duties and are therefore immune from liability for the acts alleged." On defendants' motion, the District Judge amended his order to indicate that a controlling question of law existed, decision of which would advance termination of the litigation, and this Court granted defendants leave, pursuant to 28 U.S.C. § 1292(b) (1970), to appeal from the denial of their motion for summary judgment.

Before addressing ourselves to the issues raised by the parties, one preliminary matter requires our attention. In his amending order, the District Judge stated that "the controlling question of law . . . is whether destruction of a prisoner's legal materials, properly seized as contraband, is automatically within the outer perimeter of the au-thority and duties of prison officials or, on the other hand, is within this perimeter only if it is shown to be reasonably related to the maintenance of discipline within the prison." Were we limited to decision of this question, we have serious doubts whether review under § 1292(b) would be appropriate. These doubts are occasioned by our belief that, while an answer to the question posed by the District Court could control disposition of the litigation, the question is not one "of law as to which there is substantial ground for difference of opinion" as required by § 1292(b). The District Court's question comprehends factual as well as legal matters, requiring a factual decision as to the defendants' duties as well as a legal decision as to the relationship that official action, to be immunized, must bear to the official's duties.

The parties did not brief or argue the question set forth by the District Judge. Instead, the parties' contentions involved the availability of any immunity to defendants, the standard for determining if immunity exists, and the sufficiency of the affidavits to establish such immunity as a matter of law. We presume that the court below intended these legal questions concerning defendants' immunity, which were raised in the motion seeking certification from the District Judge, to be considered under his statement of the controlling question.

Even were this not so, we would have jurisdiction to decide the issues presented to us. 28 U.S.C. § 1292(b) (1970) does not speak of the court of appeals deciding a question certified by the district court. Under § 1292(b) the district court is required to certify that an "order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation . . . ." Once the district court makes this certification, we may, in our discretion, permit appeal from the order. The district court has made the necessary certification; and we find that controlling ques-

tions of law, those briefed by the parties, exist. Since under the clear terms of § 1292(b) we are called upon not to answer the question certified but to decide an appeal, we do not find ourselves bound by the District Judge's statement of the issue. See J. Moore, Moore's Federal Practice, § 110.25[1]. In keeping with the purpose of § 1292(b) to permit decision of legal issues as to which there is considerable question without requiring the parties first to participate in a trial that may be unnecessary, we proceed to a determination of the legal issues raised by the parties. See 1958 U.S. Code Cong. & Ad.News 5255–5257.

We are concerned here only with the correctness of the District Court's denial of defendants' motion for summary judgment.[1] That denial must be affirmed if there was any material factual issue properly put in dispute by the parties. We summarize briefly the facts set forth in the affidavits, first outlining the facts not in dispute.

Following his conviction for bank robbery, plaintiff filed an appeal and a petition for habeas corpus, proceeding pro se in both actions. Later he sought the aid of a fellow inmate, Richard Hendrickson, in preparing supplemental briefs for those actions and provided Hendrickson with a large quantity of legal materials. Although there was a prison regulation in force at that time prohibiting any inmate from keeping another inmate's materials in his cell without prior authorization, neither Johnson nor Hendrickson applied for or received such authorization. While Hendrickson was still in possession of plaintiff's materials, Hendrickson was placed in disciplinary segregation. Cronrath, in compliance with standing orders, cleaned out Hendrickson's cell and removed all legal materials.

A factual dispute exists concerning the disposition of the legal materials. For our purposes, plaintiff's version must be accepted. Cronrath states that he saw no materials belonging to plaintiff. Plaintiff alleges that Cronrath destroyed his materials and his affidavit further states that Cronrath admitted having done so. Warden Alldredge took no disciplinary action against Cronrath, although requested to do so by plaintiff.

Defendants do not think the dispute over the disposition of the legal papers is material. They contend that summary judgment was required because the facts demonstrate that defendants, who are federal executive officers, are being sued for actions taken with authorization in performance of their official duties and, thus, are entitled to immunity. Clearly, the dispute over disposition of plaintiff's papers is material unless defendants are immune. The District Judge concluded that a dispute also existed as to whether defendants' actions were authorized, i. e., that a factual dispute existed as to whether defendants were immune.

Plaintiff argues that the decision below was correct, but not for the reason given by the District Judge. Plaintiff argues that defendants cannot, under the facts stated in the affidavits, enjoy immunity from damage liability. In support of this argument, plaintiff advances two theories, either one of which would require affirmance here. First, he claims that executive officers have no immunity from suits alleging deprivation of constitutional rights. Second, plaintiff claims that these defendants cannot enjoy immunity because they are not officials of the type covered by executive immunity. The parties have thus joined issue on the nature and scope of the doctrine of official immunity. We turn now to consideration of that doctrine.

## THE BARR DOCTRINE

In Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), the Supreme Court attempted to delineate the immunity accorded federal executive

---

1. The denial of defendants' motion to dismiss is not before us. We assume, without deciding, that plaintiff has stated a claim against the defendants unless they are immune from damage liability.

officials. *Barr* was a libel suit against the acting Director of the federal Office of Rent Stabilization. The plaintiffs, former employees of the Office of Rent Stabilization were allegedly libelled by the acting Director's issuance of a press release explaining his reasons for discharging the plaintiffs. The Supreme Court held that the Director's remarks were absolutely privileged.

■ *Barr* established first that all executive officials are potentially covered by the immunity doctrine. Despite a passing reference to the fact that defendant Barr was an officer "of policy making rank", the plurality opinion in *Barr* makes clear that the claim of immunity is not restricted to certain specific federal officials. The four-justice plurality discussed the Court's earlier decision in Spalding v. Vilas, 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780 (1896), holding the Postmaster General immune from suit, and noted that lower federal courts had not interpreted that decision as limited to cabinet officers. 360 U.S. at 572, 79 S.Ct. 1335. The plurality declared that official immunity "is not a badge or emolument of exalted office, but an expression of a policy designed to aid in the effective functioning of government." 360 U.S. at 572–573, 79 S.Ct. at 1340. We, thus, find merit in defendants' argument that official immunity from damage actions may extend to any federal executive official.

■ *Barr* also makes clear that executive officials are not automatically immune from all damage suits. Both the plurality and Justice Black's concurring opinion follow the previously established law regarding executive immunity, requiring that two criteria be met before such immunity is found. First, as *Barr* makes clear, immunity protects officers from liability only for actions having a policy-making or judgmental element. This requirement has sometimes been phrased as permitting officials to enjoy immunity from liability for the exercise of "discretionary" but not "ministerial" functions.[2] It reflects the purpose for which immunity is granted to executive, as well as judicial and legislative, officers: to ensure that important decisions are made free from the fear of personal liability or harassing suits.[3]

The second requirement, also noted in *Barr*, is that the allegedly wrongful acts must have been "within the outer perimeter" of the defendant-official's duties. This requirement embodies the distinction drawn in Spalding v. Vilas, *supra*, "between action . . . in reference to matters which are manifestly or palpably beyond [the officer's] authority, and action having more or less connection with the general matters committed by law to his control or supervision."[4] A clearer manner of stating this requirement, borrowing language from the law of agency,[5] might be that, for immunity purposes, the defendant-official's authority includes any action that he reasonably believed authorized.[6]

2. *See* Kendall v. Stokes, 44 U.S. (3 How.) 87, 98, 11 L.Ed. 506 (1845); Carter v. Carlson, 144 U.S.App.D.C. 388, 447 F.2d 358, 361–363 (1971), rev'd on other grounds sub nom., District of Columbia v. Carter, 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973); Franklin v. Meredith, 386 F.2d 958, 960–961 (10th Cir. 1971).

3. *See* Barr v. Matteo, 360 U.S. 564, 571, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959); Bivens v. Six Unknown Named Agents, 456 F.2d 1339, 1345–1346 (2d Cir. 1972); Gregoire v. Biddle, 177 F.2d 579, 581 (2d Cir. 1949), cert. denied, 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950).

4. 161 U.S. at 498, 16 S.Ct. at 637.

5. The law of agency in fact appears to have been the original basis for official immunity, deriving from the immunity of the principal, the sovereign. *See* Jaffe, Suits Against Governments and Officers: Damage Actions, 77 Harv.L.Rev. 209 (1963).

6. The District Court in this case indicated that the test of authority for immunity purposes was whether the defendants' actions constituted "an appropriate exercise of [their] discretion." The language employed by the lower court to frame that test is taken from Justice Harlan's opinion in *Barr*. Defendants

Having identified the two prerequisites for a grant of executive immunity, we must inquire whether those prerequisites are met as to the defendants here.

## APPLICATION OF BARR TO OFFICER CRONRATH

■ The first of the two requirements set forth above is that the challenged action involve an exercise of judgment. We recognize that all or nearly all official action involves some minimal exercise of judgment. It is, however, possible to separate routine determinations, strictly controlled by statutory or administrative guidelines, from determinations arrived at by the decision-maker relatively unconstrained by specific directives.

Cronrath cleaned out Hendrickson's cell and, according to plaintiff's statements, destroyed the plaintiff's legal materials that had been kept by Hendrickson. It appears clearly from Cronrath's own affidavit that specific prison regulations, standing orders to the guards, and direction from superior officers controlled his actions in cleaning out the cell, removing and, accepting plaintiff's factual statement, destroying contraband material. These routine tasks do not involve an exercise of judgment of the type fairly contemplated by the immunity doctrine.[7] It follows that Cronrath may not rely upon the doctrine as a defense to this action and, therefore, that summary judgment based on immunity grounds was properly denied.

We note in passing that immunity from suit is only one of the protections traditionally accorded government officers. At common law, specific privileges and defenses were recognized that safeguarded officials from liability for various actions that would otherwise have constituted torts. See, e. g., Pierson v.

Ray, 386 U.S. 547, 555–556, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). The applicability of such other defenses is not involved in this appeal.

## APPLICATION OF BARR TO WARDEN ALLDREDGE

■ We first consider whether the challenged actions involved an exercise of judgment within the doctrinal meaning of these words. Warden Alldredge is charged (1) with having regulated the transfer of materials among prisoners and (2) with not disciplining Officer Cronrath. These actions were products of decisions made under a general grant of authority. The regulation of the transfer of materials embodied a decision of policy to be followed, absent amendment by the warden, at all times by all the guards and inmates at the penitentiary. It thus had those qualities of permanence and breadth characterizing policy judgments. The decision not to discipline Officer Cronrath appears adjudicatory in nature. While administrative adjudicatory decisions, reflecting the application of policy to facts, may in some instances be constrained within such narrow limits as not to merit immunity, that is not the case where, as here, the decision is made by the official responsible for setting the policy to be applied. See Boulware v. Parker, 457 F.2d 450, 452 (3d Cir. 1972).

Alldredge also satisfies the second requirement for immunity: that the actions be within the outer perimeter of his authority. Affidavits submitted by Alldredge and by his immediate superior, the Director of the Bureau of Prisons, establish that Alldredge is authorized to regulate the security and discipline of prisoners and the conduct and discipline of guards. In Boulware v. Parker, *supra*, we affirmed a summary

---

contend, we think rightly, that the District Court has taken those words out of context. Justice Harlan employed that phrase in examining the general undefined authority possessed by an agency head, attempting to ascertain whether the particular function involved, issuance of a press release, was arguably au-

thorized under the defendant's general discretionary powers. Barr v. Matteo, 360 U.S. 564, 574–575, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959).

7. *Cf.* Bivens v. Six Unknown Named Agents, 456 F.2d 1339, 1346 (2d Cir. 1972).

judgment in favor of federal prison warden on immunity grounds. We noted that it was incumbent upon the plaintiff to file an affidavit in opposition to defendant's stating facts that would support the conclusion that defendant's actions were beyond the outer bounds of his authority.[8] Here, plaintiff's affidavit in no wise controverts the statements in Alldredge's affidavits concerning the scope of his authority. It therefore fails to create an issue as to scope of the warden's authority.

■■ The foregoing analysis shows that Alldredge is entitled·to the benefit of the immunity doctrine here. However, plaintiff contends that Alldredge is not so entitled because the regulation concerning possession of materials belonging to another inmate violates plaintiff's constitutional right to seek legal advice of other inmates. Without indicating any opinion as to the existence or boundaries of such a right, we note that the challenged regulation did not prohibit inmates from seeking the advice of other prisoners, but merely required permission for the transfer of materials between inmates. In any event, the constitutionality of the regulation is not relevant to the determination of defendant's authority for immunity purposes. *Cf.* Kilbourn v. Thompson, 103 U.S. 168, 26 L.Ed. 377 (1881); Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1872); Gregoire v. Biddle, 177 F.2d 579 (2d Cir. 1949) (L. Hand, J.), cert. denied, 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950). The immunity of an officer from damage liability is dependent not upon the legality of his action but upon its having sufficient connection with his duties that the officer could reasonably believe his action

authorized. Alldredge's actions were clearly within his authorization.

■ Since Warden Alldredge's actions are of the type entitled to immunity protection, and, as established by his affidavits without contradiction by plaintiff's, those actions were within his authority, Warden Alldredge is immune from damage liability for his actions. His motion for summary judgment should have been granted.

## IMMUNITY FROM SUIT FOR VIOLATION OF CONSTITUTIONAL RIGHTS

■ In light of our ruling respecting Warden Alldredge, we must dispose of one additional contention. Plaintiff urges us to hold that even if Alldredge is entitled to immunity under the doctrine applied in *Barr*, he is not immune from liability for the violation of constitutional rights. This contention is composed of three related arguments: (1) this action for violation of plaintiff's Fifth Amendment rights is the federal analogue of a suit against state officials under 42 U.S.C. § 1983 (1970); (2) § 1983 restricts or abrogates common law immunities; and ·(3) it would be anomalous for federal officials to be immune from suits alleging violation of rights for which state officers would be liable. We assume without deciding that points (1) and (3) of plaintiff's contention are correct. Point (2), however, we cannot accept.

While some courts have stated that § 1983 should be read as limiting the immunity recognized at common law,[9] this Court, sitting in banc has ruled that § 1983 does not abrogate immunities recognized at common law. Bauers v.

---

8. In cases where the authority of the official or the nature of the actions taken by him were unclear, we have deferred decisions regarding immunity until further development of those facts. *E. g.*, United States ex rel. Moore v. Koelzer, 457 F.2d 892, 894 (3d Cir. 1972). Where, however, as here, such facts are clearly established by affidavits, we have disposed of the immunity issue and have not

required further proceedings. *E. g.*, Lockhart v. Hoenstine, 411 F.2d 455, 460 (3d Cir.), cert. denied, 396 U.S. 941, 90 S.Ct. 378, 24 L.Ed.2d 244 (1967).

9. *See, e. g.*, Sostre v. McGinnis, 442 F.2d 178 (2d Cir. 1971) (en banc), cert. denied sub nom., Oswald v. Sostre, 405 U.S. 978, 92 S.Ct. 1190, 31 L.Ed.2d 254 (1972).

Heisel, 361 F.2d 581, 586–588 (3d Cir. 1965), cert. denied, 386 U.S. 1021, 87 S.Ct. 1367, 18 L.Ed.2d 457 (1967). The *Bauers* decision concerned the immunity of judicial officers to damage suits under § 1983. Adhering to the reasoning of the Supreme Court's decision in Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), that state legislators were immune from § 1983 damage suits, we overruled an earlier decision of this Court and held that state prosecutors are immune from damage actions brought under § 1983. Our reasoning was that the statute creating the § 1983 right of action should not be construed to be in derogation of the common law, absent express declaration or unavoidable implication in the statute. *Id.*, 361 F.2d at 586–588. Both majority and dissent noted that there may have been some justification for concluding that the statute had such effect, but this Court felt bound by the Supreme Court's decision in Tenney v. Brandhove. See also Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). This panel feels similarly constrained by our decision in *Bauers* to hold that officials immune from damage suits at common law would also be immune from such suit under § 1983.

It may be suggested that this decision and our prior decision in Boulware v. Parker, *supra*, are in conflict with our statement in Gaito v. Ellenbogen, 425 F.2d 845 (3d Cir. 1970), that "a state prison official, is not . . . clothed with immunity. . . ." 425 F.2d at 849. *Gaito* involved claims by a state prisoner for habeas corpus and for § 1983 relief against the state prison warden and other officials. *Boulware*, which held a federal warden immune from damage liability was a tort suit by a federal prisoner. Reading *Gaito* and *Boulware* together, it could be argued that the disstinction must be between suits under § 1983 and "ordinary" tort suits. Our decision in Bauers v. Heisel, however, negates this line of reasoning. The statement in *Bauers* that § 1983 cannot be construed to be in derogation of common law immunities is essential to the holding in that case.

We do not believe that our *Gaito* decision contradicts what we said in *Bauers*. We note initially that *Gaito* made no explicit claim for damages, although this Court generously treated his ambiguous complaint as comprehending a claim for damages. More importantly, the statement in *Gaito* that prison officials are not immune from damage suits was not required for the disposition of that case: dismissal of the complaint against the warden for failure to state a claim. The short treatment of possible immunity for the warden may indicate that the Court did not intend to rule on the warden's immunity. Instead, the reference to his non-coverage by immunity seems designed only to distinguish the warden from the other *Gaito* defendants, all of whom were clearly immune under decisions of this Court or of the Supreme Court, to allow disposition of the complaint against the warden to rest on another ground, namely failure to state a claim.

For these reasons, we reject plaintiff's contention that the common law immunity accorded executive officers is inapplicable here.

We reverse so much of the order below as denied summary judgment to Warden Alldredge and affirm that order insofar as it denied summary judgment to Officer Cronrath.