James Allen BYRD, Plaintiff,

v.

**WARDEN, FEDERAL DETENTION HEADQUARTERS, NEW YORK, NEW YORK, et al., Defendants.**

No. 72 Civ. 3872.

United States District Court,
S. D. New York.

May 30, 1974.

**38**

———◆———

James Allen Byrd, pro se.

Paul J. Curran, U. S. Atty. S. D. N. Y., for defendants; Dennison Young, Jr., Asst. U. S. Atty., of counsel.

## OPINION

ROBERT J. WARD, District Judge.

Plaintiff, a federal prisoner, brings this action seeking damages and injunctive relief for an alleged injury to his left eye which he claims to have suffered while working in the X-ray Department at the Federal Detention Headquarters ("FDH"), 427 West Street, New York, New York. He further alleges that defendants failed to provide proper medical treatment following the injury.

Defendants move pursuant to Rules 12(b)(1) and (6), Fed.R.Civ.P., to dismiss the complaint on the grounds that the Court lacks jurisdiction over the subject matter and that the complaint fails to state a claim upon which relief can be granted. For the reasons hereinafter stated, the motion is granted except as to the defendant Safety Officer.

The essential facts as set forth in the complaint, which for purposes of this motion must be taken as true, are as follows: On April 1, 1972, plaintiff was working in the X-ray Department of the FDH where he was then confined as a prisoner. On that date he claims to have accidently dropped a timing device used in X-ray development into an acid solution causing some of the solution to splash into his left eye resulting in a sixty per cent loss of vision in that eye.

Plaintiff contends that on numerous occasions prior to the accident he had requested that protective goggles be issued to those handling the acid solution but that his requests were ignored. He further alleges that he neither received certain medication that was prescribed for his injury, nor after being transferred to the Federal Penitentiary in Atlanta, Georgia was he able to receive further medical attention. Additionally he claims to have been transferred to the Atlanta prison for having notified defendants of his intention to commence this action.

 Construing the complaint as an action against the United States for the negligence of its employees, this Court is without jurisdiction over the subject matter. It is undisputed that plaintiff's injury was incurred during the course of a work activity at the institution in which he was confined. Accordingly, the remedy of inmate accident compensation authorized by 18 U.S.C. § 4126 is exclusive as to the benefits provided to federal prisoners who are injured in the course of their employment. United States v. Demko, 385 U.S. 149, 87 S.Ct. 382, 17 L.Ed.2d 258 (1966). Suits against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b) and § 2671 et seq., seeking to recover damages in an amount greater than the compensation provided by 18 U.S.C. § 4126 are barred. *Id.*

 Furthermore, the United States is not liable under the FTCA for additional damages resulting from any aggravation of injury caused by the negligence of its employees in providing proper medical treatment since any such aggravation of injury resulted from the initial injury. *Cf.* Balancio v. United States, 267 F.2d 135 (2d Cir.) (per Hand,

J.), cert. denied, 361 U.S. 875, 80 S.Ct. 139, 4 L.Ed.2d 114 (1959), (construing Federal Employees Compensation Act to bar suit under FTCA for aggravation of injuries due to negligent medical treatment); *accord,* Sanders v. United States, 387 F.2d 142 (5th Cir. 1967). As stated by the Court of Appeals in *Balancio, supra,*

> "the aggravation of [plaintiff's] initial injuries, suffered while he was indubitably in performance of his duty, should be regarded as resulting from the initial injuries themselves. * * * [T]hat is the rule at common-law when the claim is for negligence; the initial wrong is the cause of all that follows, even when there has intervened a succeeding negligent act that produced the aggravation. We interpret the Compensation Act as a substitute for the whole of the claim that, but for it, would have arisen under the Tort Claims Act. Of course it may be true that the compensation granted by the Compensation Act, is not an adequate substitute for the unlimited recovery open to Federal employees, as well as others, under the Tort Claims Act. That is to say, it is possible that to accord to all Federal employees a limited remedy for injuries, even though they are caused without 'fault,' is not the equivalent of a grant of unlimited remedies under the Tort Claims Act to those who can show that their injuries are caused by 'fault.' However, that is certainly not for us to say. Be it as it may, we cannot disregard the fact that Congress meant that, whenever 'compensation' was available to a Federal employee, it was to be his only remedy."

267 F.2d at 137–138.

The complaint insofar as it is deemed to join the United States as a defendant is accordingly dismissed.

■ Plaintiff, however, has not chosen to sue the United States but rather the individual employees who allegedly caused his injury. Such an action against the Public Health Service and its officer is specifically precluded by 42 U.S.C. § 233. The complaint against the Public Health Service and its officer is therefore dismissed.

■■ There is no such specific preclusion applicable to the other named defendants, the Warden and the Safety Officer. However, even the most liberal reading of the complaint fails to disclose any tort personally committed by the Warden. Since "[a] superior officer is not liable for the tort of a subordinate even when the subordinate would be liable for his own tort," 3 K. Davis, Administrative Law Treatise § 26.01 at p. 506 and cases cited therein at n. 1, the complaint fails to state a claim against him upon which relief can be granted. Accordingly, the complaint against the Warden is dismissed.

■ The Court finds that it has subject matter jurisdiction as to the Safety Officer and that the complaint states a claim against him upon which relief can be granted. The traditional common-law rule is that employees, including public employees, are legally liable for their own negligent torts. 3 K. Davis, *supra,* § 26.01 at 506–08 and § 26.02 at 514–20; Dicey, The Law of the Constitution 189 (8th ed. 1915). The common-law rule has been limited to those employees performing ministerial functions; officers who exercise discretionary power are not liable for their torts. Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959); Howard v. Lyons, 360 U. S. 593, 79 S.Ct. 1331, 3 L.Ed.2d 1454 (1959); Gregoire v. Biddle, 177 F.2d 579 (2d Cir. 1949), cert. denied, 339 U. S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950); 3 K. Davis, *supra,* § 26.01 at 508–11 and cases collected therein.

At least some of the uncertainty respecting the reach of the doctrine of privilege or immunity of federal officials espoused in these cases has been laid to rest by Bivens v. Six Unknown Named Agents of Fed. Bur. of Narc., 456 F.2d 1339 (2d Cir. 1972). In *Bivens,* plaintiff sued agents of the Federal

Bureau of Narcotics for damages for their alleged violation of the Fourth Amendment guarantee against unreasonable searches and seizures. The Supreme Court held that this allegation constituted a claim upon which relief could be granted, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and remanded the case to the Court of Appeals for the Second Circuit for its determination whether the acts of the Federal Bureau of Narcotics agents were clothed with immunity. The Court of Appeals resolved two issues: " * * * (1) is there a showing that the Narcotics Agents were acting 'within the outer perimeter of [their] line of duty'; and, if so (2) were they alleged to be performing the type of 'discretionary' function that entitles them to immunity from suit." 456 F.2d at 1343.

As to scope of authority, the Court of Appeals held:

"We believe that what is meant by the phrase 'within the outer perimeter of [an officer's] line of duty' is that the officer must have been acting in his role as a government officer. Here, the duties of these defendants include making arrests in cases involving narcotics. They were doing just that. We hold that this is sufficient to satisfy the requirement that they be acting within 'the outer perimeter of [their] line of duty.' " 456 F.2d at 1345.

Applying this standard to the Safety Officer in the instant case, this Court finds that he was acting in his role as a government officer or employee. His duty as Safety Officer would appear to require him to issue or provide for the issuance of safety equipment to prisoners to the extent required by the duties to which they are assigned. The Court finds that since the issuance of safety goggles is clearly "within the outer perimeter of [the officer's] line of duty" since he would not have this responsibility but for his position, his alleged failure to exercise that responsibility is also "within the outer perimeter of [his] line of duty."

The Court of Appeals in *Bivens* went on to state:

"Once it has been established that the officers were acting within the scope of their authority, in order to be immune they must show that they perform 'discretionary acts at those levels of government where the concept of duty encompasses the sound exercise of discretionary authority.' Barr v. Matteo, *supra*, 360 U.S. 564, 575, 79 S.Ct. 1335, 1341 [3 L.Ed.2d 1434] (1959).

" * * * The question to which we must address ourselves now is, therefore, do the defendants in this case perform duties that may be termed discretionary?

"In deciding this question, however, words such as 'discretion' are not particularly helpful. As we said in Ove Gustavsson Contracting Co. v. Floete, 299 F.2d 655, 659 (2d Cir. 1962), cert. denied, 374 U.S. 827, 83 S.Ct. 1862, 10 L.Ed.2d 1050 (1963):

There is no litmus paper test to distinguish acts of discretion, * * * and to require a finding of 'discretion' would merely postpone, for one step in the process of reasoning, the determination of the real question—is the act complained of the result of a judgment or decision which it is necessary that the Government official be free to make without fear or threat of vexatious or fictitious suits and alleged personal liability?

Thus, the real question to be asked is whether or not federal officers performing police duties warrant the protection of the immunity defense. We hold that they do not." 456 F.2d at 1345–1346.

The application of this standard to questions of immunity, although stated in *Bivens* in the context of a case alleging deprivation of a constitutional right, is not thus limited. Rather, it is required in all cases where the issue of official immunity *vel non* is present. *Cf.* Galella v. Onassis, 487 F.2d 986, 993–994 (2d Cir. 1973); *see* Ove Gustavsson Con-

tracting Co. v. Floete, 299 F.2d 655, 659 (2d Cir. 1962), cert. denied, 374 U.S. 827, 83 S.Ct. 1862, 10 L.Ed.2d 1050 (1963).

 Turning to the Safety Officer named as a defendant in this action, the Court finds that he did not perform duties warranting the protection of the immunity defense. The decision which he had to make, *i. e.*, whether to issue safety goggles to those working with acid in an X-ray Department, does not involve the performance of "discretionary acts at those levels of government where the concept of duty encompasses the sound exercise of discretionary authority," Barr v. Matteo, *supra*, 360 U.S. at 575. Admittedly, the Safety Officer had to make a choice but it was not a choice at a high level of government or involving a substantial exercise of judgment. Whatever minimal choice was involved in the Safety Officer's decision was far less substantial than the choices exercised by federal officers performing police duties. To state the same idea somewhat differently, the Safety Officer's decision in the instant case involved a purely routine determination as to which the Officer need not be able to exercise unfettered discretion. Plaintiff has presented to the Court a portion of Bureau of Prisons Policy Statement H–27001.1 which would seem to indicate that the Safety Officer in fact was bound to act within the confines of an administrative regulation. *See* Johnson v. Alldredge, 488 F.2d 820, 825 (3d Cir. 1973). Even in the absence of this or another applicable administrative regulation, there is undoubtedly a generally accepted practice as to use of protective equipment during the X-ray process. The Court is, therefore, convinced that the Safety Officer is not an official entitled to immunity from suit.

Furthermore, the existence of a remedy against the United States in the form of inmate accident compensation, as authorized by 18 U.S.C. § 4126, does not bar plaintiff's action against the Safety Officer. As pointed out above, this statute does not contain a provision precluding an action against the individual employee. Congress, when it has wanted to do so, has provided for such a preclusion. *See, e. g.,* Federal Drivers Act, 28 U.S.C. § 2679(b); 42 U.S.C. § 233 (Public Health Service officers and employees). Significantly, the FTCA, which would apply in the absence of the substitute remedy provided for by 18 U.S.C. § 4126, does not preclude a plaintiff's right to sue a negligent federal employee except as limited by other specific statutory preclusions. Government Employees Insurance Co. v. Ziarno, 273 F.2d 645 (2d Cir. 1960).

This action is permitted to proceed against the defendant Safety Officer and is dismissed as to all other defendants.

The Court having been advised by the United States Attorney that plaintiff has been unconditionally released from federal custody, he is directed to mail a copy of this opinion to the plaintiff at his last known address.

It is so ordered.