**Katherine W. BURKHART et al.**

**v.**

**William SAXBE et al.**

**Civ. A. No. 74–826.**

United States District Court,
E. D. Pennsylvania.

July 2, 1975.

individually and as former Attorney General of the United States, and John Doe and Richard Roe as unknown agents of the Department of Justice, with violating the plaintiffs' rights under the First, Fourth, Sixth and Ninth Amendments of the Constitution and 18 U.S. C. Chapter 119 (§§ 2510–2520) and 47 U.S.C. § 605. The complaint alleges that plaintiffs' conversations were overheard between November 1970 and January 1971. (Complaint ¶¶ 11–15). In addition to money damages and attorneys fees, other appropriate relief is sought. In the answer filed on June 14, 1974 on behalf of all defendants except Mitchell, additional electronic surveillances were admitted. (Answer ¶¶ 13 and 14). A motion to dismiss, or in the alternative for judgment on the pleadings, has been filed. A protective order was entered staying discovery pending the outcome of the present motion.

David Rudovsky, Philadelphia, Pa., for plaintiffs.

Gordon W. Daiger, U. S. Dept. of Justice, Washington, D. C., C. Oliver Burt, III, Asst. U. S. Atty., Philadelphia, Pa., for defendants.

*MEMORANDUM OPINION AND ORDER*

VANARTSDALEN, District Judge.

Pretrial discovery in *Philadelphia Resistance v. Mitchell*,[1] Civil Action 71–1738 (E.D.Pa.1971), disclosed that during the course of warrantless electronic surveillance of persons not parties to the present action, conversations of the present plaintiffs were overheard.

The instant case was filed April 1, 1974 charging William Saxbe, individually, and as Attorney General of the United States, Clarence Kelley, individually and as Director of the Federal Bureau of Investigation, John N. Mitchell,

■■ Saxbe and Kelley contend they were not parties to the occurrences upon which the claim is based and, therefore, no relief is possible against them. In the Fourth Defense of the Answer, it is asserted that Saxbe became Attorney General on January 4, 1974, and Kelley, FBI Director on July 9, 1973. The complained of surveillances took place more than two years prior to these dates. It follows that neither Saxbe nor Kelley could have been a party to the intercepted conversations presently the subject of this lawsuit. However, both are still proper parties. Chapter 119 creates a civil cause of action for "[a]ny person whose wire or oral communication is intercepted, disclosed or used . . . against any person who intercepts, discloses, or uses, or procures any other person" to do so. 18 U.S.C. § 2520. The complaint charges the defendants not only with interception but with use and disclosure (¶¶ 1, 17, 20 and 21). It is premature, at this stage of the pro-

---

1. In *Philadelphia Resistance*, plaintiffs allege violation of their constitutional rights by unlawful and politically motivated harassment, intimidation and surveillance by the defendants. Defendants contend their activities were lawful and pursuant to the investigation of the burglary of the Media Office of the FBI on March 8–9, 1971.

ceedings, to decide the issues of disclosure and use. These matters require a more complete record. Moreover, to the extent that injunctive relief may be appropriate, Kelley is a proper party.[2]

■■■ Immunity is the basic and far reaching defense upon which the present motion is predicated. Saxbe, Mitchell and Kelley claim an absolute immunity because they are and/or were high ranking, policy making officials of the executive branch. They cite as their principal authority *Barr v. Mateo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959). The remaining defendants Doe and Roe also seek the same shield of immunity under a theory of agency. My conclusion is that defendants have, at most, a qualified immunity rather than absolute immunity. Absolute immunity may be conceptualized as a shield from civil liability. Qualified immunity, on the other hand, is an affirmative defense on the merits which must be alleged in the pleadings and factually proven by the defendant. *Zeller v. Donegal School District Board of Education*, 517 F.2d 600, at 612 (3d Cir., 1975) (en banc) Seitz, Ch. J., joined by Van Dusen, Adams and Gibbons, JJ., dissenting) ; *Sarteschi v. Burlein*, 508 F.2d 110, 113 n.4 (3d Cir. 1975). The applicability of qualified immunity depends on individual facts which can only be disclosed from a complete record. Hence, dismissal on the basis of immunity, in the instant action, is inappropriate. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Fid-*

*tler v. Rundle*, 497 F.2d 794 (3d Cir. 1974); *Safeguard Mutual Ins. Co. v. Miller*, 472 F.2d 732, 734 (3d Cir. 1973).

■■■ The immunity available to Mitchell, Saxbe and Kelley is only qualified. This is the case even though they occupied policy making positions in which they were imbued with great discretion and responsibility.[3] In *Scheuer v. Rhodes, supra*, a Civil Rights action under 42 U.S.C. § 1983 was brought against the Governor of Ohio and others. The Supreme Court held that only a qualified immunity existed for the state's chief executive officer, although the scope of the immunity varied according to the scope of discretion and responsibility of the officer. More recently in *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), (U.S.1975), which dealt with qualified immunity of school board officials in an action seeking damages under 42 U.S.C. § 1983, the Supreme Court re-emphasized the fact that only qualified immunity existed and that it hinged on the good faith of the defendant. The court adopted a two-part test which embraced the subjective aspect of the official's sincere belief that his action was "right" as well as reliance upon an objective standard of settled and indisputable law. *Wood, supra*, at 321, 95 S.Ct. 992.

■■■ Defendants point to the decision of the Supreme Court in *United States v. United States District Court*, 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972), as evidence that the defend-

2. This court, on its own, takes judicial notice of the fact that Saxbe is no longer Attorney General. However, he is still a proper party for possible claims of disclosure and use of intercepted statements. Further, no motion has been filed seeking to substitute Edward Levi.

3. Even under *Barr v. Mateo, supra*, defendants' claim of absolute immunity is probably unavailing. *Barr* held that an absolute immunity in tort existed for employees in the executive branch of the federal government so long as the complained of activity was the result of a policy making or discretion-

ary decision made within the outer-perimeters of their authority. Here, constitutional rights and not merely defamation is at issue. Moreover, the plaintiffs' allegations must be accepted as true at this stage of the proceedings. *Home Indemnity Co. v. Consolidated Dressed Beef Co.*, 353 F.Supp. 1297 (E.D.Pa.1973). The surveillances are alleged to have been aimed at chilling, *inter alia*, the First Amendment rights of the plaintiffs. It is doubtful that this could be within the outer perimeter of authority of any of the defendants.

ants were acting in reliance upon what was settled law allowing electronic surveillance for national security cases. They also cite *Sinclair v. Kleindienst*, Civil Action No. 610–73, Slip op. (D.D. C. Apr. 30, 1975), which upheld a claim of immunity in a factually similar case. Without going to the merits of defendants' position, the law in this circuit is clear that a claim of immunity may not be dealt with in this fashion. *Fidtler v. Rundle, supra*. Facts must be developed showing the objective and subjective criteria mandated by *Wood v. Strickland*. The additional assertion that plaintiffs must allege malice or ill-will is likewise unfounded. *Zeller, supra* at 612 (dissenting opinion).

 *Scheuer*, which dealt with state officials as defendants in a Civil Rights action under 42 U.S.C. § 1983 has been specifically applied by at least one federal court to federal officials in a civil action. *Apton v. Wilson*, 506 F.2d 83, 92 (D.C.Cir.1974). Moreover, federal courts have allowed only qualified immunity to federal officials in suits challenging constitutional deprivations. *See, e. g., Chapman v. Kleindienst*, 507 F.2d 1246 (7th Cir. 1974); *Hoitt v. Vitek*, 497 F.2d 598 (1st Cir. 1974); *Johnson v. Alldredge*, 488 F.2d 820 (3d Cir. 1973); *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 456 F.2d 1339 (2d Cir. 1972). In *Fidtler v. Rundle*, the Court of Appeals for the Third Circuit interchanged the immunity principles of actions involving both state and federal officials, because "no reason" existed for not applying the immunity principles developed in cases against federal officials to a case under § 1983 against a state official.[4] I find no reason in law or logic why the converse does not equally apply.

█ Agents Doe and Roe cannot and do not claim absolute immunity. Because they occupy non-policy making positions lacking the responsibility and discretion of Mitchell, Saxbe and Kelley, they could not have asserted the doctrine of *Barr v. Mateo*. *See, e. g., Johnson v. Alldredge, supra; Bivens v. Six Union Agents, supra*. The validity of their claim of immunity through agency cannot be evaluated from this record and similarly is inappropriate for resolution at this time.

 Defendants also contend that no claim for relief is possible under either 47 U.S.C. § 605 (Supp.1974) or 18 U.S.C. § 2520 (Supp.1974). The plaintiffs have conceded that no claim exists under § 605. Defendants state that a complete defense to a civil cause of action under § 2520 exists because of the "national security exemption" of § 2511(3) which excludes from Chapter 119

the constitutional power of the President to take such measures as he deems necessary to protect the Nation against actual or potential attack or other hostile acts of a foreign power, to obtain foreign intelligence information deemed essential to the security of the United States, or to protect national security information against foreign intelligence activities.

They then argue that because their Answer asserts that the surveillances were made for national security reasons they are exempt from suit. Of course, this begs the question of whether these surveillances were performed for national security purposes, as that phrase is defined in § 2511(3). In order for a defendant in a civil action under § 2520 to

---

4. Although prosecutors performing their duties may have quasi-judicial immunity from damage suits, *United States ex rel. Rauch v. Deutsch*, 456 F.2d 1301 (3d Cir. 1972); *Bauers v. Heisel*, 361 F.2d 581 (3d Cir. 1966), such a claim by Mitchell or Saxbe as Attorneys General is not possible here. That immunity is quasi-judicial in nature and as such requires a relationship to the judicial process. In the instant case, it is alleged that Mitchell and Saxbe supervised an investigation, and this is not within the ambit of quasi-judicial immunity. *Hampton v. City of Chicago*, 484 F.2d 602 (7th Cir. 1973); *Dodd v. Spokane County, Wash.*, 393 F.2d 330 (9th Cir. 1968).

successfully use the § 2511(3) "national security exemption" a two step inquiry is necessary: (1) was the surveillance done for national security purposes; (2) does the allegation of "national security" comport with the congressional purpose of § 2511(3). While the "national security exemption" of § 2511(3) may be a complete defense to a § 2520 civil action, unsupported statements by defendants that the surveillances are within the "national security exemption" do not divest the plaintiffs of their cause of action on a motion to dismiss. From the present record it cannot be determined whether the warrantless surveillances were in fact aimed at foreign espionage agents, domestic subversives, or-ganized criminals or political enemies. Therefore, this motion is premature and must be denied.[5] Cf., *Abramson v. Mitchell*, 459 F.2d 955 (8th Cir. 1972); *Kinoy v. Mitchell*, 331 F.Supp. 379 (S. D.N.Y.1971).

Defendants further contend that the relevant surveillances took place prior to the decision of *United States v. United States District Court* in 1972, and that *District Court* should not apply retroactively. *District Court*, it is alleged, made domestic security actionable under § 2520 by excluding it from the "national security exemption" of § 2511(3). I do not agree with this interpretation. While *District Court* is the definitive opinion on Chapter 119, it is not written in the context of creating a new civil cause of action, rather it develops Chapter 119 within the meaning of the Fourth Amendment in the context of a criminal prosecution. However, it is not necessary at this stage of the proceedings to deal with the effect, if any, of the retroactivity (or non-retroactivity) of *District Court* to this case. It is not clear from this record that these surveillances were even performed for domestic

national security reasons. It may be that surveillances were in no way predicated upon national security grounds as that term was envisioned by Congress.

---

5. In *Zweibon v. Mitchell*, 363 F.Supp. 936 (D.D.C.1973), reversed D.C.Cir., 516 F.2d 594, the motion for summary judgment was granted because a complete record showed that the surveillance was for national security purposes aimed at United States-Soviet relations.