James M. TINDALL, Plaintiff,

v.

W. C. MOORE et al., Defendants.

Civ. A. No. 19333.

United States District Court,
N. D. Georgia,
Atlanta Division.

April 1, 1976.

Hugh M. Dorsey, III, Atlanta, Ga., for plaintiff.

Julian M. Longley, Jr., Asst. U. S. Atty., N. D. Ga., Atlanta, Ga., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

MOYE, District Judge.

### I.

### FINDINGS OF FACT

Based upon the evidence presented upon the trial of this action, this Court makes the following findings of fact:

1.

That at the time of the injury and at the time of the filing of this action, plaintiff was a resident of the State of Florida, though temporarily within the State of Georgia.

2.

That at all times and places germane hereto, defendant Gilbert was a resident of the State of Georgia and was employed as a foreman in the mattress factory located in

the United States Penitentiary in Atlanta, Georgia.

3.

That at all times and places germane hereto, defendant Smallwood was a resident of the State of Georgia and was employed as a foreman in said mattress factory and was the immediate superior of defendant Gilbert.

4.

That at all times and places germane hereto, defendant Moore was a resident of the State of Georgia, was employed as a foreman in said mattress factory and was the immediate superior of defendant Smallwood.

5.

That on or about July 21, 1972, the plaintiff was hired to work for the Prison Industries Bureau in said mattress factory.

6.

That the plaintiff was at that time assigned to operate a "close-in" machine.

7.

That during the Spring of 1973, approximately one-half of the personnel of the mattress factory were laid off, but the plaintiff was retained.

8.

That the plaintiff continued to operate the "close-in" machine until May 21, 1973.

9.

That on May 21, 1973, defendant Smallwood directed the plaintiff to operate an eye-letting machine (more commonly known as and hereinafter referred to as a "vent machine").

10.

That the plaintiff was without any prior experience in the operation of a "vent machine."

11.

That the plaintiff was never offered or given any form of instruction or assistance with regard to the operation of said machine.

12.

That as of May 21, 1973, the machine to which the plaintiff was assigned had removed a certain safety feature which required the use of the left hand for the operation of said machine.

13.

That the plaintiff did not know nor was he informed that said safety feature had been removed.

14.

That as of May 21, 1973, all three defendants had operated said machine at a time when said safety feature had been removed from said machine.

15.

That as of May 21, 1973, the machine to which plaintiff was assigned was malfunctioning in that when said machine was triggered to punch one hole in mattress siding, it would occasionally continue with a second stroke (more commonly known as and hereinafter referred to as a "double trip").

16.

That the plaintiff was never informed that said machine would double trip.

17.

That defendant Smallwood knew that the plaintiff was without any prior experience in the operation of a "vent machine."

18.

That defendant Smallwood knew that the plaintiff was never offered or given any form of instruction or assistance with regard to the operation of said machine.

19.

That defendant Smallwood knew that said safety feature had been removed from the machine to which the plaintiff was assigned.

20.

That defendant Smallwood knew that plaintiff was never informed that said safety feature had been removed from said machine.

**21.**

That defendant Smallwood did not know that the machine which the plaintiff was directed to operate was malfunctioning.

**22.**

That defendant Gilbert knew at a time prior to the time of the plaintiff's injury that the plaintiff had been assigned to the "vent machine."

**23.**

That defendant Gilbert knew that the plaintiff was without any prior experience in the operation of a "vent machine."

**24.**

That defendant Gilbert knew or should have known that the plaintiff was never offered or given any form of instruction or assistance with regard to the operation of said machine.

**25.**

That defendant Gilbert knew that said safety feature had been removed from the machine to which the plaintiff was assigned.

**26.**

That defendant Gilbert knew or should have known that the plaintiff had not been informed that said safety feature had been removed.

**27.**

That defendant Gilbert did not know that the machine which the plaintiff was directed to operate was malfunctioning.

**28.**

That defendant Moore knew at a time prior to the time of the plaintiff's injuries that the plaintiff had been assigned to the "vent machine."

**29.**

That defendant Moore knew that the plaintiff was without any prior experience in the operation of a "vent machine."

**30.**

That defendant Moore knew or should have known that the plaintiff was never offered or given any form of instruction or assistance with regard to the operation of the machine.

**31.**

That defendant Moore knew that said safety feature had been removed from the machine to which the plaintiff was assigned.

**32.**

That defendant Moore knew or should have known that the plaintiff had not been informed that said feature had been removed.

**33.**

That based upon the testimony of the Prison Industries' safety officer, Mr. Immell, and the safety reports tendered into evidence by Mr. Immell, all three defendants were under obligation to conduct safety instruction and lectures.

**34.**

That the operation of the machine to which the plaintiff was assigned required the use of the operator's hands in and about the moving parts of the machine.

**35.**

That defendants Moore, Smallwood and Gilbert knew that the operation of the machine to which the plaintiff was assigned required the use of the operator's hands in and about the moving parts of the machine.

**36.**

That the plaintiff continued to operate the "vent machine" from May 21, 1973, until approximately 10:15 A.M., May 23, 1973.

**37.**

That at approximately 10:15 A.M., May 23, 1973, the plaintiff reached into said machine in order to remove a piece of material which had been punched out by the machine.

**38.**

That when the plaintiff did so reach into the machine, the machine did continue to operate or double tripped.

**39.**

That by so continuing to operate, the machine in question did strike the index finger of the plaintiff's left hand.

**40.**

That the plaintiff, having received no instruction and having no prior experience on said machine, did not assume the risk of said injury.

**41.**

That said injury was not the result of an "accident," as defined by the law, or any negligence on the part of the plaintiff.

**42.**

That if said machine had not been malfunctioning, the plaintiff would not have suffered injury despite the absence of the safety feature.

**43.**

That by the machine so striking the plaintiff's index finger, the bone was pushed through the top of the finger, thereby mutilating the index finger of the plaintiff's left hand.

**44.**

That at the time of said injury the defendants Moore, Smallwood and Gilbert were present.

**45.**

That the plaintiff, after mutilation of said index finger, went to the hospital of the United States Penitentiary.

**46.**

That the plaintiff was admitted and received medical attention at said hospital.

**47.**

That as a result of the striking of the plaintiff's said index finger, the plaintiff has been subject to six operations, resulting ultimately in the loss of the upper portion of the index finger of his left hand.

**48.**

That prior to said loss, the plaintiff had skin removed from his forearm and grafted to the index finger of his left hand.

**49.**

That the plaintiff also had skin removed from the second finger of his left hand and grafted to the index finger of his left hand.

**50.**

That by virtue of the permanent loss of the upper portion of the index finger of the plaintiff's left hand, the plaintiff's left hand is thereby permanently and partially disabled.

**51.**

That as a result of said loss, the plaintiff's left index finger is permanently disfigured.

**52.**

That defendant Smallwood was negligent in assigning the plaintiff to the machine in question without training and instruction as to its proper use.

**53.**

That defendant Smallwood was negligent in ordering, allowing and permitting the removal of the said safety feature from the machine in question.

**54.**

That defendant Smallwood was negligent in assigning the plaintiff to a machine which had said safety feature removed.

**55.**

That defendant Smallwood was negligent in failing to warn the plaintiff that said safety feature had been removed.

**56.**

That defendant Moore, once being aware of the plaintiff's assignment, was negligent in allowing the assignment of the plaintiff to the said machine without proper training and instruction.

**57.**

That defendant Moore was negligent in allowing or permitting the removal of said safety equipment from the machine.

**58.**

That defendant Moore, once being aware of the plaintiff's assignment, was negligent in allowing the assignment of the plaintiff to a machine which had said safety feature removed.

**59.**

That defendant Moore, once being aware of the plaintiff's assignment, was negligent

in failing to warn the plaintiff that said safety feature had been removed.

### 60.

That the actions taken and not taken by the defendants in this case do fall within the outer perimeter of their line of duty, but further, that said actions and inactions did not involve the performance of discretionary authority; said actions and inactions in the instant case involved purely routine determinations which did not and do not require the exercise of unfettered discretion.

### 61.

Defendants' negligence, however, was not the proximate cause of plaintiffs' injury. The plaintiff's evidence is that there was a malfunctioning machine which caused the injury, which malfunction was unknown to defendants (see Finding of Fact No. 42).

## II.

## CONCLUSIONS OF LAW

### 1.

That this Court has jurisdiction in this action pursuant to 28 U.S.C.A. § 1332, by virtue of the complete diversity of citizenship between the plaintiff and the co-defendants and the existence of amount in controversy in excess of Ten Thousand & No/100 Dollars ($10,000.00).

### 2.

■ That though 18 U.S.C. § 4126 is the exclusive remedy against the United States for federal prisoners who are injured in the course of their employment [*United States v. Demko*, 385 U.S. 149, 87 S.Ct. 382, 17 L.Ed.2d 258 (1966)], the Court affirms its earlier ruling that said section does not preclude the plaintiff's right to sue a negligent federal employee except as it may be limited by other specific statutory preclusions. *Byrd v. Warden*, 376 F.Supp. 37 (S.D.N.Y.1974).

### 3.

■ That though the defendants have been found as a matter of fact to have been operating within the outer perimeter of their employment, the defendants' actions and inactions do not involve the performance of "discretionary acts at those levels of government where the concept of duty encompasses the sound exercise of discretionary authority." *Barr v. Matteo*, 360 U.S. 564, 575, 79 S.Ct. 1335, 1341, 3 L.Ed.2d, 1434 (1959). Further, the defendants' decisions in the instant case involved a purely routine determination as to which the defendants need not be able to exercise unfettered discretion. The Court is, therefore, convinced that the defendants are not officials entitled to immunity from suit. *Byrd v. Warden, supra.*

### 4.

That the defendants are not liable to the plaintiff for the damages incurred by the plaintiff since his injuries were not caused by their negligence.